## VIRGIL P. ELOSSER, Administrator,

*vs.*

## ALICE J. FLETCHER et al.

## ALICE J. FLETCHER et al.

*vs.*

## VIRGIL P. ELOSSER, Administrator.

*Services to decedents: what must be proved; presumptions. Administrators: duty of—; resistance of claims; notice of invalidity; court's order; when no defense. Collection of funds due by foreign administrator. Attorney's fees. Witnesses: recalling; court's discretion.*

In order to justify a claim for services against a decedent, there must be shown that at the time of their rendition there was a design to charge, and an expectation on the part of the recipient to pay, for the services.                               p. 249

Where such services were rendered by a member of the family, the presumption of law is that they were gratuitous.  p. 249

The same doctrine is applicable to cases where such a domestic relationship exists notwithstanding the person who received and the person who rendered the services are not related by either blood or marriage.                               p. 250

A claim for board and lodging for 18 years had been filed against the estate of the sister-in-law of the claimant, who for that length of time had resided with his family, in order to help bring up and care for six children, after the death of their mother. Not only was there no evidence of any intention to charge therefor, but there was positive evidence to the contrary; the administrator was the son of the claimant; he included the claim in his account, although he had evidence that the claim was at least incorrect, and the same was approved, without any consideration or hearing as to its merits; one of the nieces of the decedent objected to the claim, and the Orphans' Court caused to be endorsed upon the account, "not to be paid until opportunity was given to determine the correctness of it"; notwithstanding which, the administrator paid the claim in full: *Held*, that under such circumstances, the administrator could not rely upon the fact that the claim was passed by the Orphans' Court, to relieve him of the consequence of his failure to protect the estate.                              p. 251

It is the duty of an administrator or executor to dispute a claim whenever he has good reason to doubt its validity.   p. 250

The right of a party to recall a witness for further examination rests in the discretion of the trial court.        pp. 251-252

It is the duty of an administrator to collect all sums due the estate.                                          p. 253

The fact that the distributees of the decedent would have received, direct from a foreign administrator, sums due the estate, does not affect the administrator's right to employ counsel to collect it.                                  p. 253

In determining the value of an attorney's services, while the amount involved, in the absence of agreement, is not a controlling factor, yet it is one that may be considered in settling the question.                                      p. 253

*Decided May 5th, 1915.*

Two appeals in one record from the Orphans' Court for Allegany County.

The facts are stated in the opinion of the Court.

The causes were argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*F. Brooke Whiting* (with whom was *Geo. L. Eppler* on the brief), for the administrator, appellant and appellee.

*Ferdinand Williams,* for the heirs of Emily Wenrick, appellants and appellees.

Thomas, J., delivered the opinion of the Court.

Mrs. Emily Wenrick, of Allegany County, Maryland, died about September 12th, 1913, leaving as her only heirs at law and next of kin the children of her deceased sisters and brother.

At the time of her death she owned an undivided one-half interest in a farm in Allegany County of which she and her brother-in-law, A. L. Elosser, were seized as tenants in common. She also had $2,620.21 in the Second National Bank of Cumberland, $465.34 in the German Savings Bank of Cumberland, and was entitled to receive about $18,000.00 from the estate of a deceased sister, Mrs. Hanks, who died in Pennsylvania about six months previous.

Mrs. Elosser, the wife of A. L. Elosser, another sister of Mrs. Wenrick, died in 1890, leaving three young children, and the evidence in the case indicates, although not very clearly, that after the death of Mrs. Elosser, Mrs. Wenrick went to live with Mr. Elosser to take care of her sister's children. However that may be, the admitted fact in the case is that from 1898 to the time of her death Mrs. Wenrick lived with A. L. Elosser and his family at their home in Cumberland.

After her death letters of administration upon her estate were granted by the Orphans' Court of Allegany County to her nephew, Virgil P. Elosser, the son of A. L. Elosser.

On the 20th of February, 1914, A. L. Elosser filed against
the estate a claim amounting to $3,339.00, the items of which
are $18.00 for "board and room" for each month from
April, 1898, to September, 1913, and $9.00 for "board and
room" for one-half of the month of September, 1913.   The
claim was passed by the Orphans' Court, but shortly there-
after, on the 10th of March, 1914, one of Mrs. Wenrick's
nieces appeared in the Orphans' Court with counsel and
notified the Court that she objected to its payment.   The
Orphans' Court promised her that the claim "should not be
paid until an opportunity was given to determine the cor-
rectness of it," and thereupon the objection to the claim was
noted on the claims docket of the Court with the further
memorandum, "Don't allow without a hearing."   Notwith-
standing the notice to the Orphans' Court and the memo-
randa referred to, the administrator, on the 13th of March,
1914, paid his father on account of the claim $2,545.00 by
a check on the fund in the Second National Bank, and
$480.00 by a check on the Savings Bank, and paid the bal-
ance of the claim on the 14th of July, 1914.

On the 25th of August, 1914, the administrator settled
his first account in the Orphans' Court, in which he was
charged with the amounts in the Second National Bank and
the Savings Bank, and interest thereon, and a judgment for
$9,000.00 and interest, amounting to $12,845.41, and was
allowed for funeral expenses, costs, commissions, a counsel
fee of $100.00 paid J. H. Longenecker, of Pennsylvania, and
a counsel fee of $1,000.00 paid to Whiting & Eppler, amount-
ing to $2,584.02, leaving a balance due the estate of $10,-
261.39.   No reference was made in that account to the claim
of A. L. Elosser.   Shortly after it was settled a number of
the heirs at law of the deceased filed a petition in the Or-
phans' Court, objecting to the allowance of the counsel fees
mentioned and praying that the order of Court approving
the administrator's account be rescinded, and that their ob-
jections to the counsel fees and to the claim of A. L. Elosser
be heard by the Court.

After a hearing the Orphans' Court refused to allow the claim of A. L. Elosser, but approved the previous allowance of counsel fees, and the appeal in number eight is by the administrator from the action of the Court in reference to the claim of A. L. Elosser, while the appeal in number nine is by the heirs at law of Mrs. Wenrick from that part of the order allowing the counsel fees.

The record contains nearly two hundred pages of testimony, but in the view we take of the case it will not be necessary to do more than make a brief reference to it. The testimony of the witnesses produced by the exceptants is to the effect that Mrs. Wenrick performed the duties of a servant in Mr. Elosser's home, and that throughout the period from 1898 to the time of her death, in September, 1913, except when on semi-annual visits, of several weeks' or a month's duration, to her sister in Pennsylvania, she did the cooking and housecleaning for his family and nursed his children during attacks of typhoid fever. On the other hand, the testimony adduced by the administrator tends to show that she lived with her brother-in-law as one of his family; that he employed a woman to do the washing and housecleaning, and that the deceased only did such work as a member of the family would do. She received from A. L. Elosser one-half of the rent or proceeds from the farm owned by them and which was under his management, and while it appears that $2,000.00 of the money she had in the Second National Bank was received by her from the estate of her sister, Mrs. Hanks, who, as we have said, died about six months before the death of Mrs. Wenrick, the evidence fails to show how long she had had the balance of the money in the Second National Bank or the amount in the Savings Bank. There is no evidence of any payment by her to the claimant for "room" or "board," or of an express contract to pay. There is not a suggestion in the evidence that the "room and board" were furnished by her brother-in-law with the intention to charge for them, or that he ever intimated to her that

he intended to make such a charge. No deduction was ever made by him from the rent received from the farm on account of board furnished her, nor is there the slightest evidence to show that she expected to pay for the same.

Under such circumstances, there is no implied promise to pay. In the case of *Bantz* v. *Bantz,* 52 Md. 686, the Court said: "In order to justify a claim for services against a decedent, there must have been a design, at the time of the rendition, to charge, and an expectation on the part of the recipient to pay, for the services. The services must have been of such a character, and rendered under such circumstances, as to fairly imply an understanding of payment, and a promise to pay. There must have been an express or implied understanding between the parties that a charge for the services was to be made, and to be met by payment." In the case of *Bixler* v. *Sellman,* 77 Md. 494, the Court held that where the "services are rendered by a member of the family of the person served * * * a presumption of law arises that such services are gratuitous," and in the case of *Pearre* v. *Smith,* 110 Md. 531, JUDGE SCHMUCKER said: "It appears from the evidence on behalf of the plaintiff— the defendant offered none—that the services sued for consisted of aiding the testator's sisters, during more than twenty years prior to his death, in the performance of current domestic labor in the household composed of him and them. The evidence does not tend to show that the services were rendered in pursuance of an express or implied contract, or that there was a design at the time of their rendition to charge for them, or that any claim for payment was asserted, or demand therefor made upon the testator during his lifetime. The evidence on the contrary shows that the services in question were voluntarily and cheerfully rendered by the appellee, who was an inmate of the household without being required to pay either board or lodging. It further shows that when she was, on several occasions, presented with sums of money by different members of the family in the absence of a demand therefor on her part, she accepted

them without, so far as the record shows, suggesting the existence in her favor of a right to compensation. We have definitely determined in a series of cases that services performed under such circumstances by a member of the family are not sufficient to support a claim against a decedent's estate for compensation." In the last mentioned case the Court held that the appellee was a member of the decedent's family notwithstanding she was not his blood relation, and in the still later case of *Harper* v. *Davis,* 115 Md. 349, the doctrine was held to apply where such a domestic relationship exists notwithstanding the person who received and the person who rendered the services are not related by either blood or marriage. The same principle applies to support furnished by one to another under like circumstances; 9 *Cyc.* 273-274 and cases cited in the note.

Counsel for the administrator insist that the claim was paid by the administrator without any notice of the objection to its allowance after it had been passed by the Orphans' Court, and that the principles referred to can not be urged as against him. It was said in the case of *Owens* v. *Collinson,* 3 G. &. J. 25: "The irresistible inference is that if an executor or administrator, *bona fide,* without any knowledge of its injustice, pay a claim, thus passed or proved, that the payment is not made at his risk," and this rule has been repeatedly followed; *Semmes* v. *Young,* 10 Md. 242; *Newcomer* v. *Beeler,* 116 Md. 647; *Garrison* v. *Hill,* 81 Md. 206. But this Court has said that it is the duty of an administrator or executor to dispute a claim when he had good reason to doubt its validity; *Strasbaugh* v. *Dallam,* 93 Md. 712. And the same rule is stated in 18 *Cyc.* 515, where a number of cases are cited in support of the text, and where it is said: "It is the duty of the representative to contest all claims presented against the estate which he believes, or has reason to believe, are unfounded or unjust." In the case at bar the claim covers a period of fifteen years, and is for $18.00 per month for every month during that period, notwith-

standing the uncontradicted evidence shows that Mrs. Wenrick made two visits, of several weeks or more each, every year during that time to her sister in Pennsylvania, and that she spent several months with her prior to her death. The evidence also shows that after Mrs. Wenrick made her home with Mr. Elosser, the administrator was a member of his family for at least six years. He must therefore have known of these visits of Mrs. Wenrick to her sister, and that she could not properly be charged for board during her absence from his father's house. The fact that the claim did not make any allowance for the time that Mrs. Wenrick was absent during the visits referred to, independent of any other features of the case, was enough, we think, to impose upon the administrator the duty of making further inquiry as to its merits. He can not, under such circumstances, be held to have paid it without any knowledge of its injustice, or without any reason to believe that it was "unfounded or unjust," or rely upon the fact that the claim was passed by the Orphans' Court to relieve him of the consequences of his failure to protect the estate from any improper and unjust demand. This Court said in the case of *Garrison* v. *Hill, supra*: "Clear and unequivocal evidence of guilty knowledge, fraud or collusion should be produced to justify a Court in holding an executor responsible for a claim paid by him after it had been passed by the Orphans' Court," and we have no desire to relax that rule. But where the administrator knows, as the administrator in this case must have known, that a claim is unjust, the proper discharge of his trust requires him to resist payment notwithstanding the *ex parte* approval of the claim by the Orphans' Court.

The only exception urged by counsel for the appellant to the rulings of the Orphans' Court on the evidence is to the refusal of the Court to allow the administrator, when *recalled* as a witness, to testify to a conversation he had with the deceased. Apart from the question whether the evidence offered falls within the prohibition of section 3 of Article 35

of the Code, the right to recall the witness for that purpose was a matter within the discretion of the Court.

This brings us to the consideration of the question in regard to the allowance of the counsel fees. The evidence shows that at the time of Mrs. Wenrick's death she was entitled to receive from the estate of her sister, Mrs. Hanks, who was a resident of and died in the State of Pennsylvania, about $18,000.00, and that the executrix of Mrs. Hanks claimed that the balance due the estate of Mrs. Wenrick should be distributed by her under the laws of Pennsylvania to Mrs. Wernick's heirs at law and next of kin. The administrator of Mrs. Wenrick insisted that the amount due her estate was payable to him, and employed Messrs. Whiting & Eppler for the purpose of enforcing his claim. The evidence also shows that they represented the administrator in proceedings instituted in Pennsylvania, and that they employed J. H. Longenecker, Esq., an attorney of Pennsylvania, to assist them. After a careful examination of the law bearing upon the questions involved, and after having been required to make four trips to Pennsylvania, the controversy was finally adjusted and the litigation concluded by an agreement under which a judgment for $9,000.00 was assigned by Mrs. Hanks' executrix to the administrator of Mrs. Wenrick, and the balance due the estate of Mrs. Wenrick was distributed to her next of kin and heirs at law by the administratrix of Mrs. Hanks. Mr. Whiting testified that the compromise or agreement was made in order to avoid further and expensive litigation, and that Mr. Longenecker accepted $100.00 as compensation for his services in consideration of services rendered him by Mr. Whiting in another connection. A number of members of the bar were called to testify as to what would be a reasonable fee for services rendered, and they all stated that in their opinion the fee allowed by the Orphans' Court was a fair and reasonable compensation for such services, except one, who testified that he thought that a fee of five or six hundred dollars would be a

reasonable allowance.    It would serve no good purpose to discuss this evidence at length, or to refer to the reasons given by the various witnesses for their conclusions as to the value of the services.    While in our opinion the amount allowed is, judging from the character and extent of the services, a very liberal one, in view of all of the evidence in the case we would not be justified in holding that it is excessive or so unreasonable as to warrant a reversal of the order of the Orphans' Court.

The amount recovered by the administrator was the $9,-000.00 judgment and interest, but the amount involved in the controversy with Mrs. Hanks' administratrix was between eighteen and twenty thousand dollars.    The result of employment of professional services may, by agreement, be made the basis of compensation, while the amount involved is often an element to be considered in determining the importance of litigation and the responsibility of counsel; but, in the absence of an agreement, neither can be regarded as the only matter to be considered in arriving at the value of an attorney's services.    It frequently happens that the amount recovered or involved is entirely out of proportion to the services required.    Nor is the fact that the heirs at law of Mrs. Wenrick would have received her share of Mrs. Hanks' estate through a distribution to be made in Pennsylvania a controlling feature in determining the value of the services rendered by counsel for the administrator.    It was the administrator's duty to collect all sums due the estate, and if the amount to which the estate of Mrs. Wenrick was entitled from the estate of her sister was properly payable to him, it was his duty to collect it, and, if necessary, to employ counsel for that purpose.

For the reasons stated the order from which these appeals were taken will be affirmed.

> *Oerder affirmed, one-half of the costs to be*
> *paid out of the estate, and the other half*
> *to be paid by Virgil P. Elosser.*