# RALPH McALLISTER

## *vs.*

## STATE OF MARYLAND.

*Criminal Law—Cross-Examination of Defendant—Other Crimes—Receiving Stolen Goods—Evidence—Harmless Error.*

One accused of crime, who volunteers to meet the charge against him by testifying in his own behalf as to that charge, cannot be compelled to testify on cross-examination as to another crime which is in no way connected with that for which he is being tried, and which the State would not be permitted to prove by other witnesses. pp. 650, 651

That defendant, when sought to be cross-examined as to another crime committed by him, makes no formal claim of privilege, is immaterial, if it is apparent from his protest against such examination that he is trying to protect himself. p. 651

On a prosecution for receiving a stolen article, the admission of evidence that the person from whom defendant received the article had stolen other articles from the same store *held* to be, although erroneous, not prejudicial, defendant not being charged with receiving any of such other articles, and they having been stolen long after the taking of the article which defendant was charged with receiving. p. 653

Evidence as to other articles subsequently taken by the thief to the house from which defendant obtained the article in question, in connection with which other articles, however, defendant was not accused of any crime, was inadmissible. p. 653

*Decided March 22nd, 1922.*

Appeal from the Circuit Court for Wicomico County (BAILEY and DUER, JJ.).

Criminal proceeding against Ralph McAllister for receiving stolen goods. From a judgment of conviction said McAllister appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Levin C. Bailey,* submitting on brief, for the appellant.

*Amos W. W. Woodcock, Assistant Attorney General,* with whom were *Alexander Armstrong, Attorney General,* and *Curtis W. Long, State's Attorney for Wicomico County,* on the brief, for the appellee.

ADKINS, J., deliver the opinion of the Court.

This is an appeal by Ralph McAllister from a conviction of having received a stolen pistol, knowing it to have been stolen. The evidence shows that some time in January, 1921, or during the preceding Christmas season, a pistol was stolen by one Crisp Bates from Dorman & Smyth Hardware Company of Wicomico County, where he was employed; that this pistol was taken by Bates to his home, where he lived with his wife, and subsequently was taken to the home of Mrs. Ella McAllister and placed by him on her mantel, he having gone to live at her house, and she having requested him some time before to get her a pistol for protection. Ralph, her son, was in the habit of going to his mother's about twice a week. On one of the visits he saw the pistol on the mantel and took it home with him and sold it to one Walter Adkins. There is no direct testimony in the record that the traverser at the time he took the pistol knew it had been stolen or that Bates brought it to the house; on the contrary, such knowledge is denied by both him and his mother.

There are twenty-nine bills of exception in the record, all to the rulings of the trial court on evidence. The first seven exceptions were to the court's permitting the witness, Crisp

Bates, to be asked as to the taking by him of other things than the pistol from the hardware company.

The eighth was to permitting the witness, Dorman, president of the company, to identify the pistol and certain knives and forks and spoons.

The ninth, to the refusal to strike out the answer of Dorman, "Mr. Crisp says he took it," to the question "who took that revolver from your store?"

The tenth was to the question: "Mr. Dorman, has Mr. Bates made any statement to you or any acknowledgment to you of articles having been stolen from your store?" and the answer thereto: "Mr. Bates, the last talk I had with him, he said, 'some of these things I paid for,' but he didn't say which."

The eleventh was to the following question propounded to Mrs. McAllister, Ralph's mother, as to articles taken to her house by Bates, other than the pistol. Q. How many other things did Mr. Bates take there in the nature of hardware? Ans. Nothing, only that silverware.

The twelfth and thirteenth were to the following questions asked Fred Dukes, an officer of the State Motor Police, and the answer thereto, this witness having testified that he was in Salisbury during the month of June, 1921, investigating the robbery at Dorman and Smyth's hardware store, which had occurred some time in May or June, viz.: Q. Please state to the court what conversation he (the traverser) had with you, if any, relative to connecting Mr. Crisp with that crime or any other crimes in connection with the Dorman and Smyth Hardware Company? A. Ralph said this here Bates Crisp was taking a lot of stuff from Dorman and Smyth's, and that he had taken a revolver from there and sold it to Walter Adkins. Q. Did he make any statement relative to any other robbery at Dorman and Smyth's? A. He said that Bates Crisp had been taking stuff from Dorman and Smyth's right along, and he said he thought he was the

·man that pulled off the job, and if we went around to the McAllister house we would find some of the things.

The fourteenth and fifteenth were to questions asked Sheriff Wm. W. Larmore, who arrested Bates and searched his house, viz: Q. What did you find there? Ans. I found numerous articles, lots of articles of different kinds, cooking utensils, and in addition to that, aluminum ware, buckets and teapots and coffee pots and boilers and wash tubs and quite a number of stuff, and in nine other homes I searched and got a load of stuff. Q. He admitted stealing it, did he? A. Yes, he didn't say he didn't in not one talk with him, that he didn't acknowledge that he took the stuff from Dorman and Smyth's.

The sixteenth was to the question, "You ran away, didn't you?" Ans. "No, sir, I didn't run away." This exception was abandoned by counsel for appellant in their brief.

The next question was, "What did you do? A. "Merely got on the train and went away. It wasn't on account of the pistol."

The remaining exceptions, thirteen in number, were to the overruling of objections to questions asked traverser on cross-examination suggesting that he had been guilty of forgery and compelling him to answer against his protest. This line of examination followed the last answer above quoted.

The first of this series was: Q. What was it on account of? A. It wasn't here. It didn't concern this at all. It wouldn't help you or me. This was the seventeenth exception. The court's ruling on this objection was correct. The examination then proceeded.

Q. What did it concern? A. It was something that occurred in another county. Q. What was it? A. It isn't in this at all; I don't know why you want to know it. At this point the court said "the witness is on the stand in his own behalf and has no protection." Q. The court has ruled for you to answer the question; answer it? A. It was something that happened, a check as you call it, in another county.

To the last four questions there were no objections, as it had not fully developed that the purpose of the cross-examination was to involve the traverser in the admission of his guilt of a crime in no way connected with that for which he was being tried.   This purpose was developed by the next question: Q. A forged check?   A. You can call it forged or not; it was given to me.

At this point the court, having previously forced the witness against his protest to testify, should have stopped this character of examination, and its refusal to do so was prejudicial error.

True, privilege was not claimed by the witness in a formal way, but the court must have known from his previous protest that he was trying to protect himself.   He probably had never heard of "privilege" in the technical sense, and counsel are not permitted to interpose an objection on this ground.   There was however a general objection by counsel.

That the inquiry was improper can admit of no doubt.   It was said by this Court in *Guy* v. *State,* 90 Md. at page 33, quoting from 8 *Encyc. of Plead. & Prac.* 147: "As a general rule when the accused takes the stand in his own behalf, he changes his status from that of defendant to that of witness, and is subject to cross-examination as other witnesses.   Consequently he waives his privilege of refusing to give evidence against himself as to all matters within the scope of proper cross-examination."   Indeed in that case, there is a further citation with apparent approval from the last mentioned authority that the accused may be cross-examined concerning any matter *pertinent to* the issue on trial, regardless of the extent of the direct examination."

But it has never been held in this State, and is not likely to be, that the accused who volunteers to meet the charge against him by testifying in his own behalf as to *that charge* can be compelled to testify on cross-examination as to *another crime* in no way connected with the one for which he is being tried, and which the State would not be permitted to prove by other witnesses.   *Meno* v. *State,* 117 Md. 435; *Avery* v. *State,*

121 Md. 231; *Bishop's New Criminal Procedure,* vol. 1, pars. 1182 and 1183; *Hochheimer's Crim. Law* (2nd Ed.), pars. 44, 176.

The State seeks to justify this sort of inquiry as shrewd cross-examination intended to show that the reason given by the accused for going away could not have been the real reason, because he was not conscious of having done any wrong in connection with the check transaction. It will only be necessary to quote one or two of the questions asked to answer that suggestion and also to show the damaging atmosphere that was created. For example: Q. How many checks did you and Jesse Campbell and Bryan Ward forge during the week that you were in my office? Q. You did, then, admit in my office to Mr. Dukes and Mr. Dougherty that you three men had forged several checks?

It is urged that the answer of the witness prevented the questions from being harmful. With this we cannot agree. The questions, extending over six or seven pages of the record, with minutest details (*Underhill on Criminal Evidence,* 2nd Ed., sec. 61), in themselves imputed to the witness the crime of forgery and imported a knowledge by the state's attorney of the truth of the charge. While the witness denied and sought to evade, in his answers to some of these questions, yet taken as a whole, his answers tended to prove that he had been concerned in the forgery of certain checks at least to the extent of uttering one of them. The *Cothron Case,* 138 Md. 101, is cited as authority for the proposition that in a case tried before the court the strictness of the rules of evidence should be somewhat relaxed. But there must necessarily be some limit to such relaxation. In the present case we are unable to say, after a careful examination of the whole record, that the trial court probably was not unconsciously influenced by the objectionable questions and the answers to some of them.

The other exceptions may be disposed of briefly. The ruling in the first seven were erroneous but not prejudicial. The traverser was not charged with having received any of the

articles mentioned in these questions and they were stolen long after the taking of the pistol. We find no error in the ruling in the eighth exception.

There was error in the ninth but it was not prejudicial. It was hearsay.

The ruling on the tenth was clearly wrong for the same reason, but not prejudicial.

The ruling on the eleventh was wrong. It was not material what other things Bates took to Mrs. McAllister's after the taking of the pistol, as the traverser is not accused of any crime in connection with them. But the answer was probably not prejudicial.

The question in the twelfth exception may have been too broad, but no harm was done as the answer related only to the pistol.

There was no substantial error in the ruling on the thirteenth exception. What the traverser is alleged to have said about the robbery or pilfering which occurred after the pistol episode was not relevant to the issue being tried, as he was not charged with any crime in connection with the later thefts; but there was no motion to strike out the answer.

The rulings in the fourteenth and fifteenth exceptions are admitted by appellee to have been wrong. However, they were properly harmless.

For the prejudicial errors above set out the judgment must be reversed.

> *Judgment reversed and cause remanded for a new trial.*