## WILLIAM NIEMOTH *v.* STATE OF MARYLAND.
[No. 28, January Term, 1931.]

*Decided March 20th, 1931.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Harry W. Nice* and *Max Sokol,* with whom was *Helen Sherry* on the brief, for the appellant.

*William L. Marbury, Jr., Assistant Attorney General,* and *Herbert R. O'Conor, State's Attorney for Baltimore City,* with whom were *W. Preston Lane, Jr., Attorney General,* and *J. Bernard Wells, Deputy State's Attorney,* on the brief, for the State.

URNER, J., delivered the opinion of the Court.

The numerous exceptions in this record were taken in the course of the appellant's trial on a charge of robbery. The crime in which he was alleged to be a participant was committed on the morning of October 1st, 1926, in front of the Henry Sonneborn Company's plant on South Paca Street in the City of Baltimore. A taxicab, in which four employees of the company were conveying from a bank about $46,000

in currency, to be used at the plant for payroll purposes, had just reached its destination before the entrance to the company's building, when several men alighted from a car in the rear of the taxicab, and, by sudden intimidation of its occupants, through the display of firearms, robbed them of the money in their custody. The victims of the robbery were forced to remain in the taxicab until the crime was accomplished. The bandits quickly re-entered the green Cadillac car in which they had come to the scene of the raid, and drove away so hurriedly that a door of the car, not yet being closed, was broken off by coming in contact with the taxicab. When the escaping car had proceeded only a short distance, one of the robbers was killed by the discharge of a weapon in their possession. The car was abandoned in the city at the intersection of George and Ogsten Streets. In it the police found the body of the robber who had been killed, some firearms, a top coat, several caps, and a "gray slouch hat." Under the lining of the hat was a piece of paper on which was written the name and address, in Chicago, of the defendant, William Niemoth. The dead man in the car was identified as J. W. Danko, and a search of his lodging place in Baltimore brought to light a telegram sent to him ten days before the robbery from Delphos, Ohio, reading: "On our way. Will arrive in time," and signed "Bill."

It was proved by the State, and admitted by the defendant, that after his arrest he acknowledged having written his name and address on the slip of paper found in the hat, to which we have referred, and there was expert testimony that the telegram was in his handwriting. The defendant testified that the address slip was one of a number which he gave to patrons of his work as an automobile mechanic in Chicago, that he did not own the hat in which it was found, that he did not write or send the telegram, and that he had no part in the robbery, but was in Chicago at the time it was committed. Three witnesses in addition to the defendant himself supported his alibi, while two on behalf of the State testified that they saw the defendant participate in the robbery, and two others identified him as one of the occu-

pants of the car which had just previously been used in the perpetration of the crime. The exceptions reserved at the trial, which resulted in the defendant's conviction, include questions as to the admissibility of evidence, and as to the propriety of remarks by the trial judge, in connection with his rulings, and by counsel for the prosecution in their statement and argument of the case to the jury.

The first two exceptions were noted because the court allowed witnesses, who had testified that they saw the defendant taking part in the robbery, to be asked on examination in chief whether they had any doubt as to his identity. There was no error in those rulings.

The third, fourth, fifth, and sixth exceptions were not pressed. Each of the rulings which they refer to was correct.

A witness for the State, having testified that he saw the defendant on the morning of the robbery driving a car with the right rear door off, and the feet of a prostrate man projecting from it, as the witness was about to cross a street intersection where the car passed him closely and very slowly, being impeded by other traffic, and having further testified that he was positive in his identification of the defendant, was asked by the state's attorney: "Are you certain of it?" And replied: "Yes, sir; or I would not be here." A motion to strike out the words "or I would not be here" was overruled. The expression might well have been stricken out as immaterial, but the ruling could hardly have been held to involve reversible error, especially in view of the emphatic terms in which, without objection, the witness had stated his certainty that the car which he described was being driven by the defendant. Exceptions seven and eight refer to this ruling.

The manager of the telegraph office at Delphos, Ohio, from which was sent the telegram to J. W. Danko, heretofore mentioned, having testified on cross-examination that she did not recall the person who sent the message, or that she had ever seen the defendant prior to his arrest, was asked whether she had any independent recollection that he was the man who wrote the telegram. As the witness had not

attempted to identify the defendant as the sender of the message, continued inquiry on that point was unnecessary, and the court's adverse ruling, shown by the ninth exception, was without error or injury.

The original telegram to Danko was returned to the telegraph company after being photographed by the Bertillon bureau of the Baltimore police department. It was subsequently destroyed by the company, after the lapse of a year, in accordance with its regular practice. Detective Feehley tsetified that he was present when the photograph of the telegram was made, and by comparison at that time had found the picture to be an exact reproduction of the original. Counsel for the defendant then objected that the witness had not been shown to be competent to testify as an expert in regard to the accuracy of the copy. The following colloquy then occurred, in the course of which the tenth exception was reserved:

(The Court): "When a man has seen two pieces of paper with writing upon them he can say he knows one to be an exact copy of the other from which the photographic copy was made. (Mr. O'Brien): Was he present when the picture was made? (The Court): Yes, he says he was there. He remembers the original and then he is shown a photographic copy and he says the original and copy are identical. No expert testimony is needed for that; any man on the street can do that. (Mr. O'Brien): I take exception to your Honor's remark. (The Court): To what remark? (Mr. O'Brien): In this way. It is my contention that that is not the way to prove any photograph or any photographic copy. (Mr. O'Conor): We are going to bring in the photographer. (The Court): That will all be covered, I am sure, If it is not, I will strike it out. That will be to your advantage. I admit it simply because you cannot ask the state's attorney to put more than one witness on the stand at a time. If it is not properly proven it will not be allowed to stay in the case. (Mr. O'Brien): I just want to make the objection at this time."

The photographer who made the photostatic copy of the telegram was called as a witness, and testified that the reproduction was accurate, and the original was duly identified as the telegram sent to Danko from Delphos, and heretofore quoted. In the argument no point was made as to the use of the photostatic copy of the telegram for the purpose of comparison with the defendant's proved and admitted writing. It was held in *Hensel v. Smith,* 152 Md. 380, 136 A. 900, that such a copy, properly authenticated, may be used for that purpose, when the original is not accessible. Nor was it argued that the eleventh exception was directed or sustainable against the comparison made by the witness then under examination, who had testified on that point without objection. But the contention is that the remark, "any man on the street can do that," was prejudicial and a ground for reversal. That does not appear to have been the basis of the exception as understood and explained by counsel then in charge of the defendant's case. While the quoted remark was part of a statement by the court to which an exception was noted, it was stated by Mr. O'Brien, when asked what remark the exception referred, that his objection was to that method of proving a photograph. The words now said to be prejudicial were used by the court in the expression of its view that a witness was not required to be an expert to make an admissible comparison of the original and the photostatic copy of the telegram in question. The general statement to that effect could hardly have been construed by the jury, as suggested in the brief for the appellant, to indicate that the court was placing "its stamp of approval" upon the testimony of the witness then being interrogated.

After the slip of paper, found in the hat of one of the bandits, and bearing the defendant's name and address, had been offered in evidence, Detective Feehley was asked whether he requested the arrest of any one by the Chicago police. An objection to that question was overruled and the witness answered: "Niemoth's arrest was requested five or six days after October 1st, 1926." This was the occasion of the eleventh exception. It was permissible for the State

to prove, preliminary to later pertinent inquiries, that the apprehension of the defendant was requested after his name and address had been discovered in the hat abandoned by one of the robbers in his flight.

During the cross-examination of Detective Feehley, who had testified that the defendant had stated in Chicago after his arrest that his name and address on the paper just mentioned were in his handwriting, was asked: "What did he say in regard to whether or not he made this card and when he made it and how he made it and the circumstances; what do you remember about what he said?" There was an objection by the State, and the court said: "He was only asked whether or not the card was in his handwriting and if he made it. That is all that was asked on direct examination." The twelfth exception was concerned with the action of the court thus limiting the cross-examination on that point by sustaining the State's objection. The defendant's version as to the origin of the card referred to was given in his own testimony, and has been stated earlier in this opinion. It was doubtless the purpose of the cross-interrogatory to prove that the defendant made a similar explanation in connection with the admission to which Detective Feehley testified. In our opinion it would have been consistent with our decisions to have allowed the proposed inquiry (*Koogle v. Cline,* 110 Md. 587, 73 A. 672; *Smith v. Wood,* 31 Md. 293); but as the defendant's qualification of his admission was afterwards fully presented to the jury by his testimony, we are unable to find in the ruling adequate reason for awarding him another trial.

The thirteenth exception was taken to testimony of the photographer who made the photostatic copy of the telegram. The point of the objection was that the telegram had not yet been sufficiently identified. It was ruled that the testimony of the photographer be admitted subject to further proof that the telegram was the identical one delivered by the Delphos manager of the telegraph company to the Baltimore police. This action of the court was unobjectionable.

Sergeant Kakeska, of Chicago, testified that some time

after the defendant was arrested and released on bail, he told the witness that he would rather go to Mexico, or anywhere, than to Baltimore, and that his bail bond was "no good." In reference to that conversation the witness was asked on cross-examination: "Did you ask him whether he was guilty or innocent of this indictment?" An objection by the State to that question was sustained, and an exception, the fifteenth, was noted by the defendant's counsel. It was later testified by the witness that he had given all of the conversation with the defendant, so the ruling was not prejudicial. But after it had been made and the exception formally entered on the record, counsel for the defendant began to argue in support of his position, whereupon the court said: "You may tell that to the Court of Appeals. I do not want to hear it." Mr. O'Brien said: "I take an exception to that remark. I hope we will never get to the Court of Appeals." Exception No. 16 having been noted, the court then observed: "I have said that I do not want argument on objection to testimony, unless the court asks for it."

It is argued that by the remark of which the sixteenth exception complains, the trial judge revealed to the jury a belief that the defendant would be convicted, and that he was seriously prejudiced by such a disclosure. If the jury must be presumed to have understood that only in the event of a conviction would the case be appealable to this court on the evidence rulings, there is equal reason to assume an understanding by the jury that the purpose of the exception reserved by the defendant's counsel was to make a record for appellate review, if there should be occasion for an appeal. The fair implication of the judge's remark was simply that, in the event of an appeal, the question upon which he had ruled and the defendant had taken an exception could be argued to this court. It would require a strained interpretation of the remark to give it the significance suggested in the argument, and it would impute to the jury a serious lack of discrimination if we should conclude that they misconceived the utterance of the court to be an indication of belief in the defendant's guilt.

554

Exceptions seventeen to twenty-seven, inclusive, were not argued, although the appellant's brief states they were not abandoned. There was no error in any of the rulings to which they refer.

One of the State's witnesses, who had testified that he saw the defendant participating in the robbery, and who had been subjected to cross, redirect, and recross examination, and dismissed, was later recalled, and after a few questions on a point about which he had been previously cross-examined, was asked: "Do you remember on October 3rd of a reward being offered by the Fidelity & Guaranty Company of $2,500 for the arrest and conviction of the robbers in the Sonneborn affair?" An objection by the State to the question was sustained, and the twenty-eighth exception was reserved. In regard to this ruling it is sufficient to say that it was within the scope of the court's discretion to permit or disallow the inquiry when propounded to the witness on his recall. If the court had refused permission to recall the witness for any purpose, its action would not be reviewable. *Elosser v. Fletcher,* 126 Md. 244, 94 A. 776; *Hensel v. Smith,* 152 Md. 380, 136 A. 900; *Guyer v. Snyder,* 133 Md. 19, 104 A. 116; *East Baltimore Transfer Co. v. Goeb,* 140 Md. 534, 118 A. 74; *Brown v. State,* 72 Md. 468, 20 A. 186; *Wagner v. State,* 119 Md. 559, 87 A. 407; *Schwartze v. Yearly,* 31 Md. 270. In 2 *Poe's Pl. & Pr.,* sec. 288, it is said: "In practice, when a witness is called, it is the duty of the party calling him to exhaust him, and when he has been examined, cross-examined, re-examined and discharged, it is only by leave of the court that he can be recalled. This leave will sometimes be granted and sometimes refused, according to circumstances. The matter is in the sound discretion of the court, and from its decision no appeal will lie." The discretion to refuse absolutely an application to recall a witness for further interrogation involves authority to limit the purpose for which the request may be granted.

In *Elosser v. Fletcher, supra* (pages 251 of 126 Md., 94 A. 776, 779), where there was an exception to a refusal to allow an administrator, "when recalled as a witness, to tes-

tify to a conversation he had with the deceased," this court said: "Apart from the question whether the evidence offered falls within the prohibition of section 3 of article 35 of the Code, the right to recall the witness for that purpose was a matter within the discretion of the court." For that reason the ruling was affirmed. In *Legore v. State,* 87 Md. 735-738, 41 A. 60, 61, it is said in the opinion: "The witness was permitted by the court to be recalled for a particular purpose, and, that having been met, the counsel proposed to proceed with the examination, without further extension of the leave of the court. There can be no ground of complaint, if, under these circumstances, the court refuses to allow the witness to be further examined. And, if there was, no appeal would lie."

If, in this case, the trial court had been asked, in advance of the actual recall of the witness, to permit him to be recalled for the purpose of being questioned as to his knowledge of a reward offer, and the request had then been denied, the ruling would unquestionably have been an exercise of discretion which could not be reviewed by this court consistently with its former decisions. The mere fact that a particular purpose of the recall was disclosed, and the ruling against it made, after the witness was again on the stand, does not affect the principle upon which the court's discretion in regard to such questions is recognized.

Exceptions twenty-nine to thirty-two, inclusive, were not discussed in the appellant's brief. No reversible error is apparent in any of the rulings with which they are concerned.

A witness for the state, John Smallwood, had testified in chief that, on the morning of the robbery, and about half a mile distant from the Sonneborn plant, he saw the defendant and two other men leave the car which was proved to have been used in the commission of the crime. On cross-examination the witness stated that he talked with no one at or about the time to which he referred. The defense produced a witness, Mrs. Coasey, who testified that she called the attention of Smallwood to the car, and that there were no men near it at that time. As shown by the thirty-third and thirty-

fourth exceptions, the court sustained objections by the State to inquiries of the witness as to whether Smallwood said anything to her about having seen the car, and three men near it, before she apprised him of its presence. In our opinion, there was no error in the refusal to permit those questions to be asked and answered. The omission of Smallwood to state, when accosted by Mrs. Coasey after the departure of the robbers, that he had seen them leaving the car, would not be so inconsistent with the fact of such an earlier observation as to be an adequate ground of impeachment, in the absence of any reason, suggested by the testimony, for a declaration by him to that effect.

On cross-examination the defendant was asked how many times he had been convicted of crime. After answering that he had never been convicted in his life, he admitted, on further questioning, that he had been fined fifty dollars for carrying a pistol as a concealed weapon, in March, 1930. He was asked: "What was the next conviction, if any, that was returned against you?" An objection to the question being overruled, and exception No. 35 noted, the defendant replied: "That was the only time I ever carried a fine." "Q. Were you ever convicted after that? A. No, sir." There is clearly no error or injury shown by this exception.

Referring to an occasion when, as the defendant admitted, he was placed on probation on a charge of larceny or burglary, the state's attorney inquired of him whether there was not a conviction at that time, and followed this by asking: "There was either a conviction or plea?" The reply of the defendant was, "It must have been." Being asked whether that was not a case in which shotguns were taken, the defendant said: "I don't remember what it was at that time." The question being repeated, "It was the taking of shotguns, isn't that correct?" the defendant answered, "No, sir." Immediately after that answer, in the record, is the notation: "Objected to; motion to strike out; motion overruled; exception noted." To this the thirty-sixth exception relates. It does not appear how the defendant could have

been injured by the ruling to which the exception was specifically directed.

But continued inquiries by the state's attorney as to whether the defendant had not been convicted of the larceny of shotguns, though not made the subject of exception, are said to have been so persistent as to justify a reversal. The case of *Duffy v. State,* 151 Md. 456, 135 A. 189, is cited in support of that contention. In that case the defendant was pressed with inquiries, against the ruling of the trial court, as to whether he had not been arrested on a charge of the larceny of an automobile. The inquiries disregarded the principle that an accusation, as distinguished from a conviction, of crime may not be proved as a means of impeaching the credibility of a witness. Because of the persistence with which the improper examination was pressed, it was held that injury may have resulted to the defendant, notwithstanding his negative replies, and for that reason, in part, the judgment was reversed and a new trial awarded. In *McAllister v. State,* 140 Md. 647, 118 A. 147, 149, one of the grounds of reversal of the conviction of the defendant, on an indictment for receiving a stolen pistol, was a prolonged examination of the defendant by the prosecuting officer, which "imputed to the witness the crime of forgery, and imported a knowledge by the state's attorney of the truth of the charge." In the present case the examination criticized in argument inquired only about convictions, which the defendant first denied, and afterwards admitted with qualifications. The nature of his answers was such as to induce a course of cross-examination which would otherwise have been unnecessary. This record does not show conditions sufficiently similar to those appearing in the *Duffy* and *McAllister* cases to require and justify the application in this instance of the principle by which those decisions were controlled.

The thirty-seventh exception shows that the defendant was asked on cross-examination whether he had ever been out riding in an automobile with a man who was jointly named with him in the indictment on which he was being tried.

His answer was: "I probably have been. I could not say." As shown by the thirty-eighth exception, he was asked, for the express purpose of refreshing his recollection, whether he knew another named person and was with him and the codefendant in an automobile on a certain day. He said that he was in their company, but did not remember the date. The thirty-ninth exception was entered because, after the defendant had stated that he was working for a motor sales company in Chicago, during a period of several months following the robbery, when he was being sought by the police, the State was allowed to ask him why, at a hearing in Chicago, subsequent to his arrest, he did not testify he had been at work during that period at his regular place of employment. His reply was: "I do not remember." It is clear that no prejudicial error is shown by any of the three exceptions just indicated.

In the course of his argument to the jury, Mr. Wells, deputy state's attorney, referring to the defendant, said: "In Chicago, according to his own statement, he was afraid to tell what he was doing, because it would incriminate him, and he is an automobile man ——" The statement was interrupted by an objection from counsel for the defendant, who said there was no proof that the defendant said in Chicago "that he refused to tell what his occupation was because he might incriminate himself." This contradiction of the deputy state's attorney was accompanied merely by an exception (the fortieth) to his statement. No action by the court on that subject was requested. In *Luray v. State,* 157 Md. 635, 147 A. 599, 601, exceptions were noted to the action of the state's attorney in making certain remarks. In the opinion by Judge Offutt, it is said: "It appears from what has been stated that the exceptions were not taken to any ruling of the trial court, but to the 'action' of the state's attorney. But, if the accused was injured by the action of the state's attorney, it was incumbent upon him to complain of such injury to the trial court, and to ask of it such appropriate relief as would be adequate to protect his right to a fair and impartial trial, and, if such relief was refused, to

except to the action of the court in refusing it. In no other way could the propriety of the action of the trial court be presented to this court for review. For manifestly this court cannot review the propriety of some act done in the course of a trial upon which the trial court neither ruled nor was requested to rule, for that would be an exercise of original and not of appellate jurisdiction." There is consequently no question for our decision presented by the fortieth exception.

The state's attorney having objected to a statement, in the argument of one of the defendant's counsel, that two occupants of the raided taxicab were not produced by the State as witnesses "because they were honest men and would testify this was not the man," the court said: "Of course, counsel have a right to explain the law and suggest inferences which may be drawn from the evidence, but I did not hear anybody say anything to the effect that those men in the taxi had seen or might have seen who took the money bags, so I do not see that that statement is warranted by the evidence in the case." An exception (No. 41) was taken to that remark of the court. There is no just occasion to characterize the statement as improper. It was made because of an objection by the state's attorney to an assertion which he might naturally resent, and which the evidence did not support.

The remaining three exceptions (Nos. 42, 43, and 44) were taken to remarks of the state's attorney, in his argument to the jury. They complain of no action or omission of the court. For that reason they raise no question which could be decided on this appeal. *Lumay v. State, supra.* The argument for the appellant included the contention that he was prejudiced by remarks of the court and state's attorney other than those excepted to, and that we should consider the effect of such remarks as a ground of reversal, even though they were not challenged by exceptions reserved at the time of the trial. It is further contended that the appellant was injured by statements made, in argument to the jury, by one of his attorneys, who does not represent him on appeal, and

that he should be given a new trial on that ground. The record does not afford any adequate reason for disregarding the sound and settled rule that the only questions to be decided on appeal are those upon which the judgment of the trial court has been invoked as shown by exceptions duly noted, where that method of reservation is required by established practice.

The question raised by a motion in arrest of judgment was not argued on behalf of the appellant, and, under Rule 39 of this court, relating to briefs and argument, may be treated as abandoned. But it is clear that the ground of the motion was untenable. It disputed the validity of the general verdict rendered on the indictment, which, in separate counts, described in various forms the single offense with which the defendant was charged. The judgment was validly entered on the verdict. *Manly v. State,* 7 Md. 138; *Gibson v. State,* 54 Md. 447; *State v. McNally,* 55 Md. 559; *State v. Warren,* 77 Md. 121, 26 A. 500; *Hechter v. State,* 94 Md. 429, 50 A. 1041, 56 L. R. A. 457; *State v. Blakeney,* 96 Md. 711, 54 A. 614; *Weeks v. State,* 126 Md. 223, 94 A. 774; *Bowser v. State,* 136 Md. 342, 110 A. 854.

*Judgment affirmed, with costs.*