ROBERT BURGESS ET AL. *v.* STATE OF MARYLAND.
[No. 7, April Term, 1931.]

*Decided June 9th, 1931.*

164

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Jerome A. Loughran* and *John Philip Hill,* with whom was *Joseph L. Donovan* on the brief, for the appellants.

*William L. Henderson, Assistant Attorney General,* with whom were *Wm. Preston Lane, Attorney General,* and *James Clark, State's Attorney for Howard County,* on the brief, for the State.

DIGGES, J., delivered the opinion of the Court.

The appellants here were convicted of larceny by a jury in the Circuit Court for Howard County, the judgment and sentence being confinement in the penitentiary for the period of four years. From this judgment they have appealed. The indictment, as drawn, contained six counts, the first, second, and fourth of which were abandoned by the State, and the defendants were tried upon the third, fifth, and sixth counts, which resulted in a verdict of not guilty as to the third and sixth counts but guilty as to the fifth count. The circumstances, as shown by the record, are that on the day in question a colored man, Marcus Curtis, was transporting 90 gallons of whisky from Baltimore to Washington in a Chrysler coach, which car and whisky belonged to one Frank Guy, a resident of the District of Columbia. Further than the above, it is impossible to ascertain from the record before us the circumstances under which the alleged crime was committed. Counsel for both sides have, in their briefs, set forth certain facts which the record here does not contain; and while these statements may describe what took place according to the

original transcript, this court is confined to the record now before it.

While it is true that a record should be shortened by condensation, so as to contain only the testimony necessary to a determination of the questions involved, every record should contain so much of the testimony as will enable the court to have a proper understanding of the case. In no other way can the questions passed upon by the trial court be fairly and intelligently considered. This record consists of isolated bits of testimony, showing, in some instances, objection, ruling, and exception; in others, objection, no ruling, and no exception. The record seems to have been prepared upon the assumption that this court is as fully acquainted with the proceedings in the trial court as counsel who participated; and we are therefore asked to pass upon questions of evidence, on fragments of testimony, without the assistance of the context. For instance, under what is claimed to be exception 4, a witness was asked: "What cars were in that accident? The defendants by their counsel objected to the question and witness answered as follows: A Ford and a Cadillac." There is absolutely no evidence in the record of any accident, and yet we are asked to sustain the appellants' objection to that question. What the record contains is within the control of appellants, and what we desire to say is that it must be prepared in such manner as to enable us to pass upon the questions sought to be raised. Anything less than that requirement would be not only unfair to the trial court, but disastrous to the litigants. With these observations, we will proceed to pass upon such of the contentions of the appellants as are properly presented in the record.

The defendants interposed a demurrer to the indictment, and to each count thereof. The indictment charges the defendants with the larceny of an automobile and ninety gallons of whisky. The value of the automobile is alleged to have been $100, and each gallon of whisky of the value of $4.00. The demurrer was overruled, which action it is contended was erroneous, because the ownership of the articles alleged

to have been stolen was laid in two different persons. The only count in the indictment which charged larceny alleged property in Frank Guy; this was the fifth count, and the one upon which the defendants were found guilty. Other counts in the indictment, charging robbery, laid the property in Marcus Curtis. It is not proper, in one and the same count, to lay the property alleged to be stolen in more than one person, because each count must contain such allegations as will enable a jury to find the accused guilty on that count. It is clear that the jury could not find by their verdict that the same article, which they found had been stolen, was the property at the same time of different persons; but there is nothing to prevent the allegation of ownership of property in different persons, when contained in separate counts of the same indictment, for the purpose of meeting the varying degrees of proof which the testimony may develop. In the case before us, it was not certain whether the testimony would show that the automobile and whisky were the property of Curtis, or the property of Guy. After the proof was in, it was shown to the satisfaction of the jury that it was the property of Guy, and they therefore found that the defendants were not guilty of taking the property of Curtis, which was alleged in one count, but were guilty of taking the property of Guy, contained in another count. In *Bishop's New Criminal Procedure,* vol. 1, p. 377, citing numerous authorities, the principle is thus stated in a footnote: "The court should always interpose either by quashing the instrument or by compelling an election, where an attempt is made, as manifested by either the indictment or the evidence, to convict the accused of two or more offenses growing out of distinct and separate transactions; but should never interpose in either mode where the joinder is simply designed and calculated to adapt the pleading to the different aspects in which the evidence on the trial may present a single transaction."

The contention is made by the appellants in their brief that the whisky in question, being contraband, was not the subject of larceny. We do not think this question is properly

raised. It is not raised by the demurrer to the indictment, because each count of the indictment, in addition to charging the theft of whisky, also charged the defendants with the larceny of an automobile of the value of $100. Neither is it raised by what purported to be the second exception, because the record, while it shows that the defendants objected to the question by the state's attorney, "Now, what was the whisky worth?" and the court overruled their objection, there was no exception noted. The witness answered: "Four dollars a gallon." If, however, this question were properly presented, we would have no hesitancy in holding that contraband liquor is the subject of larceny. This is practically the uniform holding of the courts throughout the country, before and since the passage of the Volstead Act. *Commonwealth v. Rourke,* 10 Cush. (Mass.) 397; *Commonwealth v. Smith,* 129 Mass. 104; *Fears v. State,* 102 Ga. 279, 29 S. E. 463; *State v. Donovan,* 108 Wash. 276, 183 P. 127; *Ellis v. Commonwealth,* 186 Ky. 497, 217 S. W. 368; *People v. Kilpatrick,* 79 Colo. 303, 245 P. 719, 720; *People v. Otis,* 235 N. Y. 421, 139 N. E. 562; *People v. Wilson,* 298 Ill. 257, 131 N. E. 609; *Ray v. Commonwealth,* 230 Ky. 656, 20 S. W. (2nd) 484, 66 A. L. R. 1297; 11 A. L. R. 1030, note; 66 *A. L. R.* 1297, note; 36 *C. J.* 747. In *People v. Otis, supra,* decided after the passage of the Volstead Act, the court said: "The statute further provides that 'no property rights shall exist' in liquor illegally possessed. There can be no larceny of property not subject to ownership. How then, it is asked, may there be larceny of such liquor? If we give the broadest possible construction to these words, there is no answer; for it must be conceded that to enforce the recent amendment to the Constitution, Congress may declare that to steal liquor shall no longer be a crime. It might think it wise to license theft so as to discourage intoxication. We should not, however, readily impute to it such a design. * * * Certainly the earlier declaration of the same statute (section 3, title 2), that its provisions are to be 'liberally construed to the end that the use of intoxicating liquor as a beverage

may be prevented,' gives no indication of such a purpose. To so construe the language of section 25, title 2, would be to encourage the transportation, distribution, and consumption of liquor by the thief." In our opinion, the clear purpose of the Act of Congress October 28th, 1919, in providing that "no property rights shall exist" (title 2, section 25) in liquor illegally possessed, was to prevent the possessor of contraband liquor from resorting to law to protect him in the possession and enjoyment thereof, and to prevent claim of damages against officials for destruction of such liquor, and not that a thief should go unmolested in the event that the subject of his theft was liquor. As stated by the court in *People v. Kilpatrick, supra*: "The purpose of this act was to limit civil rights, not criminal liability; to prevent the use of the law as a weapon of offense by the law-breaker, not to make one crime a shield for the protection of the perpetrator of another. To all demands for possession of contraband, or damages for its conversion, it (the law) returns its fiat, 'No property'; to the thief who seeks its shelter it says, 'No asylum.' "

The first exception arose in the examination of Officer Kreiner, a member of the Baltimore police force, who had stated that he did not know the owner of a certain Ford coupé; and being asked if he knew who had been using that car, his answer was: "Yes." He was then asked: "Who was using it?" The defendants interposed objection to this question, which the court overruled, and the witness answered, "Juliano," who was one of the defendants. In order to pass upon this ruling, it would be necessary to assume circumstances which the record does not disclose. If we could go beyond the record, one set of circumstances might make this question objectionable, while another would result in neither error nor injury; and we are bound to assume, under such a state of the record, that there was no error.

What we have said in reference to this exception applies to exceptions 3, 4, and 5.

Sergeant Beaseman, of the State police force, while attempting to identify the car alleged to have been used in

connection with the larceny, was permitted to use the record of a report which had been made immediately after the commission of the crime, in which report the number of the car was stated. The witness testified that, while he did not make the report himself, he saw it made, and it was an accurate record of the information furnished the recorder by him. The court permitted him to refresh his recollection as to the number of the car by reference to that record. There was no error in this ruling.

The witness later testified that he had first seen Kenney, one of the defendants, at the police station in Baltimore; that Sergeant Gearhart and himself had brought Kenney to Ellicott City jail in a Chrysler coach. He was then asked: "Did Marcus Curtis see the Chrysler coach?" The defendants interposed an objection, which was overruled, and the witness answered: "The only way he could see it was to look out of the window." Without regard to whether the question was objectionable, the answer was entirely harmless.

While the defendant Kenney was under cross-examination by the State, he was asked: "Have you ever been convicted of a crime?" Objection by the defense was overruled, and exception noted. The answer was, 'Yes, sir." It is established in this state that in criminal cases, where the defendant is a witness in his own behalf, he thereby puts his character in issue, and may be asked on cross-examination if he has been convicted of crime. *Niemoth v. State,* 160 Md. 544, 556, 154 A. 66, 71. In distinguishing that case from the cases of *Duffy v. State,* 151 Md. 456, 135 A. 189, and *Mc-Allister v. State,* 140 Md. 647, 118 A. 147, Judge Urner, speaking for the court, referring to those cases, said: "The inquiries disregarded the principle that an accusation, as distinguished from a conviction, of crime may not be proved as a means of impeaching the credibility of a witness." The effect of our decision is that the mere accusation of crime is not sufficient to impeach credibility, whether it refers to the defendant or a witness, but that convictions of crime are.

On further cross-examination, this defendant was interrogated at some length as to convictions and arrests for cer-

tain crimes; and at the close of the cross-examination the defendants made a motion to strike out all of these questions and answers, which motion was overruled. We have already said that the defendant may be asked as to prior convictions of crime. Therefore a motion to strike out which includes not only testimony of prior arrests, but also prior convictions, should be overruled. It is clear that a portion of this testimony was admissible, and, as the motion went to all of it, the denial of such motion was proper.

Exceptions 12 and 13 will be considered together. There were no objections interposed, no ruling requested of or made by the court. There is nothing for this court to consider.

The remaining exceptions are 6 and 7, and arose in this manner: "The prosecuting witness was under cross-examination, and it was shown that he was at the time of testifying an inmate of the House of Correction; that he had been convicted of several violations of automobile law; and he was finally asked: "Curtis, is it not a fact that on the 19th day of December, 1925, you were arraigned before Judge McDonnell in the District Court of Washington, charged with assault, that you stood trial, and 'the witnesses were Mary Young, Ethel Curtis and Jean Cirula, and you were found guilty and sentenced to a jail term of 180 days?" An objection on the part of the State was sustained and exception noted. This question has been before this court on a number of occasions, the latest expression being found in the case of *Nelson v. Seiler,* 154 Md. 63, 139 A. 564, 566. Speaking through Chief Judge Bond, it was there said:

"Confining ourselves to efforts to impeach the veracity of witnesses, it has been decided by this court that mere charges of arrests, not followed by convictions, may not be shown. *Bonaparte v. Thayer,* 95 Md. 548, 559, 52 A. 496; *Duffy v. State,* 151 Md. 456, 468, 135 A. 189. And in *Simond v. State,* 127 Md. 29, 38, 95 A. 1073, 1077, it was recognized that previous convictions might be too remote to affect a witness' credibility. 'It would certainly be carrying the rule to its limit,' said the court, 'to ask a witness if he had been arrested ten years before for being drunk and sent to jail.'

But beyond this the court has not marked out any limits to such an inquiry. The appellant contends that only convictions for crimes involving moral turpitude reflect upon a witness' worthiness of belief, and evidence of lesser crimes is irrelevant, and that view has been adopted by many courts. But it has not been adopted in Maryland, or apparently in the majority of other states. In *Smith v. State*, 64 Md. 25, 20 A. 1026, the question admitted was whether the witness had ever been in jail, and the admission has been upheld in several of the other cases last cited, and in *McLaughlin v. Mencke*, 80 Md. 83, 30 A. 603, evidence was admitted of confinement to jail upon a conviction for drunkenness.

"But assuming that the previous crimes which may be inquired about are not limited to those involving moral turpitude, the appellant urges that some distinction must still be observed between lesser violations of the criminal law, because some of them are so plainly without bearing on the witness' credibility, and would commonly be brought into a case only for some ulterior and probably illegitimate purpose. And it seems to us this argument can hardly be denied. To admit as possible evidence of a witness' unworthiness of belief the fact that he has been convicted of driving over a stop signal, or making a left-hand turn, where it is not permitted, would be unreasonable. Criminal law and criminal procedure are made use of for the enforcement of a large volume of mere regulations of convenience and order, wholly without relation to any moral qualities; and, while it may have been less apparent in times past, it is now, at least, unescapable that some discrimination must be made when the courts come to receive evidence of violations to impeach the credibility of a witness. It is not required that the evidence be restricted to infamous crimes or those involving moral turpitude on the one hand, but, on the other, the purpose of the admission, to impeach credibility, must impose some limits; the convictions should be of infringements of the law that may have some tendency to impeach credibility, and not all infringements do. No rigid classification seems possible. The principle generally adopted by courts which

follow otherwise the practice followed in Maryland is that the trial court must exercise discretion, when offers of convictions are made, looking to the purpose for which the evidence is offered, and that its decision will not be interfered with on appeal, except when the evidence is so clearly irrelevant that its admission could not be said to be within the discretion lodged with the trial court. 2 *Wigmore, Evidence* (2nd Ed.), sec. 983. *Third Great Western Co. v. Loomis,* 32 N. Y. 127, 132; *People v. McArron,* 121 Mich. 1, 79 N. W. 944. And this we take to be the principle we are required to follow in Maryland."

In that case the testimony was admitted by the trial court of prior conviction of violation of the automobile law, and it was held that there was error in that respect, that while this question should be left largely to the discretion of the trial court, yet that court is required to exercise a sound discretion, and its decision may be reviewed on appeal. It must be conceded that the whole question is not free from difficulty, and different courts have reached different conclusions in dealing with it. Confining what we now have to say to witnesses, and excluding defendants in a criminal case, when such testimony is sought to be introduced the object is, and can only be, to discredit the witness by showing that his character is such as tends to render his testimony unworthy of belief. The issue always is the truth of the witness' testimony. In other words, is the witness devoid of moral perception, such a person as would regard lightly the obligations of an oath to tell the truth? In judging of a man's moral fibre, his previous conduct, covering a reasonable time before the inquiry, undoubtedly has a real and substantial bearing upon the question. It seems to us that there can be little argument that previous conduct of a witness can be shown to be such as, by the common experience of the average man, would justify a belief of his unworthiness as a witness. Certainly if it be shown that a witness had previously been convicted of perjury, it would materially discredit, if not entirely destroy, the value of his testimony. Conviction of many other crimes could properly have the same effect; while, on

the other hand, there may be convictions of violations of hundreds of police regulations, which in no real or true sense can be taken as tending to make one so convicted unworthy of belief. As was held in *Nelson v. Seiler, supra*, no line can be definitely established; that is to say, any line undertaken to be established would be, in its nature, arbitrary; and if such is to be established, it is a question for the Legislature and not for the court. We do hold, in accordance with the *Nelson-Seiler* case, that every conviction does not affect the witness' credibility; and if it does not, evidence of such conviction is irrelevant and not admissible.

By section 6 of article 35 of the Code it is provided: "In all cases it shall be competent for any of the parties to the proceedings to prove by legal evidence any facts showing the interest of any witness in the matter in controversy, or in the event of the suit or the conviction of such witness of any infamous crime, and in order to prove such conviction it shall not be necessary to produce the whole record of proceedings containing such conviction, but the certificate, under seal of the clerk of the court wherein such proceedings were had, stating the fact of the conviction and for what crime shall be sufficient." While this section does not in terms provide that a witness may not be impeached by proof of conviction of crime not infamous, yet it is an indication that witnesses should only be discredited by proof of conviction of infamous crimes.

The most satisfactory disposition of the question, so far as the courts are concerned, is to leave it in the sound discretion of the trial court, whose judgment in such matter should not be disturbed on appeal except in clear cases of error.

The case before us was tried October 21st, 1930, and the question asked the witness was directed to a conviction for simple assault said to have taken place on December 19th, 1925, practically five years before. In *Simond v. State,* 127 Md. 29, 95 A. 1073, 1077, it was held that evidence of conviction for drunkenness ten years prior to the trial was too remote. The court there observed: "The object of such testimony is to reflect upon the credibility of the witness, and it

would be pretty close to reflecting upon the intelligence of the jury to suppose they would be influenced in passing upon the credibility of a witness by evidence of such an incident happening ten years before." In that case the evidence sought to be introduced was of a conviction for drunkenness ten years before the trial. In this case the offense sought to be proved was a simple assault five years prior to the trial, and we are not prepared to say that, under these circumstances, the ruling of the court was so clearly wrong as to call for a reversal of the judgment. Especially is this true when it is shown by the record that the jury had the full benefit of inquiry into the witness' past life sufficient to indicate to them the probable character of the witness. What we have said has been with reference to exception 6.

Exception 7 was an attempt to bring out the same fact by a record of the witness' conviction. This exception is subject to the same comment made in reference to exception 6, and, in addition, the record itself is faulty. It reads: "283432. Marcus J. Curtis. Assault. Dec. 19, 1925. Plea not guilty. Judge McDonald. Sentenced to pay a fine of $—and in default to be imprisoned in jail for a term of 180 days.—Committed. Witness: Mary Young, Ethel Curtis, John Sirola, M. P. (Seal's place.) I hereby certify under the seal of this court that the aforegoing is a true copy of the records of the proceedings had in the Police Court in the above entitled case. F. A. Sebring, Clerk, by Eilcher, deputy clerk, Police Court, D. C." There is no evidence in the record as to whether or not the police court referred to in the certificate is a court of record, or has a seal. With no proof on the subject, we would be bound to assume that it was not. Again, the certificate is not signed by the clerk, but by some one, without initials, indicated to be the deputy clerk of the police court. This record is not certified in accordance with the act of Congress. Neither does it comply with the provisions of section 6 of article 35 of the Code, hereinbefore quoted, which requires that it should be certified under the seal of the court. Again, the certificate does not show on its

face that the party was convicted. It does provide that in default he is sentenced to jail for 180 days, and committed; but he is not required to pay any fine, and therefore he could not be committed in default of paying a fine which he was not required to pay. There was no error in refusing to admit this record.

Finding no error in any of the rulings of the trial court, the judgment must be affirmed.

*Judgment affirmed, with costs.*