## COURT OF APPEALS, (E. S.) JUNE TERM, 1820.

### Walkup *vs.* Pratt.

APPEAL from *Queen-Anne's* county court. The appellant petitioned the county court for his freedom, as being descended lineally in the female line, from a free woman named *Violet.* The general issue was pleaded.

1. At the trial the petitioner proved, by competent testimony, that he was the son of a woman by the name of *Tansey,* who was the daughter of *Violet.* And after he had given other evidence, not necessary to be noticed in this bill of exceptions, the defendant offered to read in evidence a commission, which issued in this cause on the 4th of May 1818, to three commissioners, residing in the state of *Delaware,* (they or either of them to act,) for the purpose of taking testimony and the proceedings under the commission. By the return of the commission it appeared that the oath annexed to the commission, was administered to one of the commissioners therein named by a justice of the peace of *Kent* county, in the state of *Delaware,* on the 9th of October 1818, and that the said commissioner on the same day, administered to the clerk, by him appointed, the oath also annexed, to be taken by the clerk. Then followed the interrogatories of the defendant, certified by the clerk of *Queen-Anne's* county court, stating that no interrogatories had been filed by the petitioner. The return by the commissioner was as follows, viz. "State of *Delaware,* *Kent* county, sc. By virtue of the annexed commission. I, *John Fisher,* one of the commissioners therein named, together with *Arthur Johns,* the clerk by me appointed, have, this ninth day of October in the year 1818, met at the house of *Aber Harris,* in the county aforesaid, at the hour of 3 o'clock in the afternoon, as by appointment and notice thereof given, and having taken the oath annexed to the said commission, a certificate whereof is hereunto annexed, proceeded to the execution of the same commission. Whereupon *Philip D. Feddeman,* a witness produced by the defendant in this commission named, being duly sworn true and perfect answers to make to all such interrogatories as to him should be put in this cause, and therein to speak the truth, the whole truth, and nothing but the truth. To the first interrogatory, this deponent answereth

The return to a commission to take testimony out of the state, was held to be well executed, altho' there was no other evidence that the person, who administered the oath to the commissioner, was a justice of the peace, than his own act, and the return of the commission.

Hearsay evidence is not admissible to prove the sale of a slave, but is admissible to establish a pedigree, and to identify the original ancestor, from whom the pedigree is deduced.

General reputation of a petitioner, or his maternal ancestors, being entitled to freedom, is not admissible in evidence.

Improper evidence having been used on one side, does not justify the same kind of evidence, if objected to, being used on the other.

A will and inventory, stating a negro to be a slave is evidence that the testator claimed title to such slave, and that she was appraised as a part of his estate.

The declarations of one of the representatives of a deceased person are not evidence against another, or other.

The declarations of the ancestor, under whom a petitioner for freedom derives his title, are evidence against such petitioner, and are not within the act of 1717, ch. 13.

and saith—That," &c.   Then follow the answer which the
deponent signed, &c.   "Taken, sworn and subscribed, this
9th of October 1818, before          *John Fisher*, Comsr.

I beg leave to return to the honourable the judges of
*Queen-Anne's* county court, of the state of *Maryland*,
that in virtue of the annexed commission, to me directed,
having first myself taken the oath aforesaid to the said
commission annexed, and presented for me to take, and
having also administered to *Arthur Johns*, the person by
me appointed clerk of the said commission, the oath to the
said commission annexed, and presented for him to take, I
have caused *Philip D. Feddeman*, a witness, to be sworn,
and his deposition fairly and truly to be written down, as
by the said commission I am directed; all which, together
with the said commission, I return closed to your honoura-
ble court, under my hand and seal, this 9th day of Octo-
ber 1818, as by the said commission I am directed.

*John Fisher*, Comr. (S. L.)"

To the reading of which the petitioner objected, alleg-
ing, that it did not appear, upon the face of the commis-
sion and return, that it was sufficiently executed and au-
thenticated to go in evidence to the jury.   But the court,
[*Earle*, Ch. J. and *Worrell*, A. J.] were of opinion that
it was sufficiently authenticated, and permitted it to be
read in evidence to the jury.   The petitioner excepted.

. 2. The defendant then offered to read the deposition of
the witness, as returned under the above commission, but
the petitioner objected to that part in which the witness
states, "that *Violet*, as he understood from his said mother
and sister, was the daughter of a negro woman who had
been purchased by the deponent's grandfather, *Philip Fed-
deman*, from a *Mr. Sherwood* on the bay side in *Talbot*
county.   Deponent saith, that the name of the said negro
woman, purchased by his grandfather, from said *Sherwood*,
was *Rose*, or *Violet*."   It was admitted that the mother
and sister of the deponent were both dead before the depo-
sition was taken.   But the court were of opinion, that
though this testimony was not competent as testimony to
prove the sale, that it was competent and proper, as des-
criptive of the person of *Violet* or *Rose*.   The petitioner
excepted.

3. The defendant then proved by *P. Feddeman*, that *B.
Feddeman* was his uncle, and that he had lived in early

life in *Tuckahoe*, in his neighbourhood, where he knew him well; that he afterwards removed to *Queen-Anne's* county, and knew *C. C. Ruth*, and lived for several years in his neighbourhood, and was well acquainted in his family. The defendant then asked the witness if he had ever heard in the neighbourhood, of *B. Feddeman* and *C. C. Ruth*, that the woman *Violet*, or her children, were entitled to freedom? to which he answered, without any objection on the part of the petitioner, he had not. The defendant then proved by *J. R. Pratt*, that he was related to the late *C. C. Ruth*, and that when a boy was often in his family; that in 1768 he knew *Violet*, and her three children *Sam*, *Lilly* and *Tansey*, and that *Sam* was 9 years old, *Lilly* two years younger, and *Tansey* younger than the others. The petitioner then asked the witness, *(Pratt,)* if he had ever heard in the neighbourhood, of *C. C. Ruth*, that *Violet*, and her children, were entitled to freedom? The defendant objected to this testimony going to the jury; and the court sustained the objection. The petitioner excepted.

4. The defendant then read in evidence the will of *P. Feddeman*, dated the 5th of January 1733, in which he bequeathed two mulatto slaves, namely *Violet* and *Davy*, to the child his wife was then big with, to be delivered when the said child came of age. He also bequeathed mulatto *Rose* to his wife. And in the inventory returned on his estate in 1735, wherein a negro woman named *Rose*, aged 17 years, and a negro girl named *Violet*, aged 9 years, are mentioned and appraised. The defendant claimed the petitioner as his slave, and deduced his title from the said *P. Feddeman*. The petitioner then prayed the court to direct the jury, that the will and inventory of the said *Feddeman* are not competent and admissible to prove that *Violet*, from whom the petitioner claims freedom, was a slave. Which opinion the court refused to give, and instructed the jury, that said will and inventory were competent and admissible evidence, and should be weighed by the jury as such, to prove that *Violet* was the slave of the said *P. Feddeman*. The petitioner excepted.

5. The defendant then read in evidence the will of his grandfather, *C. C. Ruth*, dated the 17th of February 1775, whereby he devised and bequeathed to his cousin *Henry*

June 1820.
Walkup
vs
Pratt

*Pratt*, and his heirs and assigns for ever, the whole residue and remainder of his estate, real and personal, after deducting the several legacies and bequests therein before mentioned and given. And also the inventory returned on his estate in 1776, in which a mulatto woman named *Violet*, 53 years old, a mulatto girl named *Lilly*, 14 years old, and a mulatto girl named *Tansey*, 9 years old, are mentioned and appraised. The defendant claimed the petitioner as his slave, and deduced his title from his father, *Henry Pratt*, who died in the year 1809, which *H. Pratt* was the devisee mentioned in the will of *C. C. Ruth*. The petitioner then prayed the court to direct the jury, that the will and inventory of the said *Ruth* were not competent and admissible to prove that *Violet*, from whom the petitioner claimed his freedom, was a slave. Which opinion the court refused to give, but instructed the jury, that said will and inventory were competent and admissible evidence, and as such should be weighed by the jury, to prove that *Violet* was the slave of *C. C. Ruth*. The petitioner excepted.

6. The petitioner proved by a witness, that she (the witness) went into the family of *C. C. Ruth* to reside, when she was about 10 years of age, and continued to reside there generally 'till the death of Mr. *Ruth*, and of Mrs. *Ruth*. That in the life-time of Mr. and Mrs. *Ruth*, the witness was in Mrs. *Ruth's* lodging room, and Mr. *Ruth* came in when Mrs. *Ruth* made complaints of *Violet's* conduct. Mr. *Ruth* listened to them, and said, *Becky*, no one can please you; but I cannot beat *Violet*, for she is as free as you or I. The petitioner then proposed to prove by the same witness, that after the death of Mr. *Ruth*, she heard Mrs. *Ruth* say, that *Henry Pratt*, the legatee, proposed to her to take as part of her thirds of the personal estate of *C. C. Ruth*, one of *Violet's* children, and that she refused to take any of them, and told *Henry Pratt* that she would not, for that he, *Pratt*, knew that *Violet's* children were free. To this testimony the defendant objected; and the court sustained the objection. The petitioner excepted.

7. The defendant then proved by a witness, that she the witness, was 72 years old; that she knew Doctor *Kitteridge* very well when she was young, and a yellow woman by the name of *Violet*, in the possession of *Kitteridge;* that she expects she was then a young woman, but does not know. And proposed to prove by the same wit-

ness, that when she was young, and whilst the said *Violet* was in the possession of Doctor *Kitteridge*, she, the witness, had a conversation with *Violet*, and that she then acknowledged herself to be a slave—that her mother was a black woman, and her father a white man. To this testimony the petitioner objected as being incompetent. But the court thought the testimony both competent and proper, and permitted it to go to the jury. The petitioner excepted.

8. The defendant then prayed the court to direct the jury, that if they should be of opinion that *Violet* was bequeathed by *P. Feddeman* as a slave, and was appraised in his inventory as a slave, and that *B. Feddeman*, to whom she was bequeathed, came of age after the year 1752, and sold her to Doctor *Kitteridge*, and that she is the same *Violet*, and is the ancestor of the petitioner, that the jury are bound to find for the defendant. To which the petitioner objected; and the court gave this instruction to the jury—That if, from the testimony, they are of opinion that the petitioner is the descendant of the woman *Violet*, devised by *P. Feddeman* to his son *B. Feddeman*, and at the death of the testator, *Violet* was a slave, they are bound to find a verdict for the defendant. The petitioner excepted. And the verdict and judgment being against him, he appealed to this court.

The cause was argued before Chase, Ch. J. Buchanan, Johnson, Martin and Dorsey, J. by

*Carmichael* and *Hopper*, for the appellant, and by

*Chambers* and *Harrison*, for the appellee.

Martin, J. delivered the opinion of the court.

The petitioner in this cause claims his freedom as being descended from a free woman named *Violet*.

In the trial of the cause below, several bills of exceptions were taken to the opinions given by the court, and whether those opinions are erroneous, it is now our duty to determine. The *first* bill of exceptions having been abandoned by the counsel for the petitioner, it is unnecessary to be considered by this court. The opinion expressed in that exception is of course concurred in.

The court are of opinion, that the opinion of the court below, in the *second* bill of exceptions, was correct. The

testimony offered being hearsay testimony, certainly was not competent to prove a sale from *Sherwood* to *Feddeman;* but pedigree may be proved by this kind of evidence, and pedigree can never be satisfactorily established, unless you are permitted to identify the ancestor. In cases of petitions for freedom, it would be nugatory to permit the petitioner to prove his descent through a long line of ancestry by hearsay evidence, if at the same time you withheld the privilege of identifying the ancestor from whom the pedigree is attempted to be traced; such evidence therefore, as descriptive of the person, for the purpose of identifying the ancestor, is admissible. The opinion expressed in the *second* bill of exceptions is concurred in.

With respect to the *third* bill of exceptions, the court are of opinion there is no error. A witness in a petition cause for freedom, cannot be asked whether it is the general reputation of the neighbourhood, that the petitioner, or his or her maternal ancestors, were free negroes, and may be entitled to their freedom, either because of their descent from a free woman, or being manumitted by deed or will; and the general reputation relied on, may be founded upon a supposed claim arising under a will or deed,-which ought to be produced at the trial, and the construction of which would solely belong to the court. Upon this subject conflicting decisions have certainly been made. In the cases referred to in the reports of *Harris & M'Henry,* such evidence was received by the court. It was, however, refused by the Supreme Court of the *United States,* in the case of *Mima Queen, and child, vs. Hepburn,* reported in 7th *Cranch,* 290; and in the case of *Henry Helmsley,* and others, against *Walls,* decided by this court at *June* term 1817, such testimony was rejected upon the principles before stated, and the court have no reason to be dissatisfied with that decision. It has been contended for the petitioner, that if this testimony was improper upon *general* principles, that it was rendered admissible by the previous examination by the appellee. If the counsel for the appellee had offered improper evidence, the court, on application, would have rejected it, but the offering improper evidence by one of the litigant parties, never can justify the introduction of similar evidence by the other party; such doctrine would lead to endless confusion, and destroy all the established rules of evidence. The opinion in this exception is concurred in.

The court are of opinion, that the county court erred in
their opinion expressed in the *fourth* bill of exceptions.
The will and inventory set forth in this exception were legal and competent evidence to prove, that *Feddeman* claimed title to *Violet*, and bequeathed her, and that she was appraised as part of his effects, and the court below ought to have declared such to have been their legal effect; instead of this, they generally directed the jury that the will and inventory were competent and admissible evidence, and ought to be weighed as such, to prove *Violet* was the slave of *Philip Feddeman.* This general direction might have misled the jury, and was therefore erroneous. The same objection applies to the *fifth* bill of exceptions. The opinions expressed in those exceptions are dissented from.

The court concur in the opinion expressed in the *sixth* bill of exceptions. The reasons assigned for concurring in the opinion expressed in the *third* bill of exceptions, apply with equal force to this, nor can the court perceive the inconsistency, (as contended for by the counsel for the petitioner,) between the opinions of the court below in the *second* and *sixth* bills of exceptions. In the *second* bill of exceptions the testimony was offered to prove *pedigree*, and *identify the ancestor*, and for that purpose was competent and proper; in the *sixth*, it was offered to prove *generally*, that *Violet's* children were free, and was subject to the objections before stated to the *third* exception. But it has been attempted to overrule the judgment in this exception, on the ground of interest in Mrs. *Ruth*, whose declarations were offered in evidence; and the position has been assumed, that wherever there is such an interest as would prevent the person from being a witness, the declarations of that person may be given in evidence by the opposite party. This position, however, cannot be sustained; for many instances may be adduced, where a person would be inadmissible as a witness, from interest, and yet his declarations would not be evidence. The bail of the defendant in a suit cannot be a witness from his interest; yet it is believed it never was attempted to offer his declarations to sustain the action. So also of security for costs, and many other cases that are not necessary to be mentioned. It must be observed in this case, that the defendant does not claim title to the petitioner from Mrs. *Ruth;* against her, and those claiming under her, the testimony might be

proper; but although she had an interest in part of *Christopher Ruth's* estate, her declarations could not be received in evidence to defeat the interest of those who claim the residue of that estate. It would be a dangerous doctrine to permit one representative of a deceased person, however small his interest might be in the estate, and who was no party to the suit, to defeat, by his declarations, the rights of all others claiming under the same estate. This, however, does not appear to be a new case; for in the notes to *Peake on Evidence, page* 24, several decisions are referred to on this point. It is there stated, that the confessions of one interested in the event of a suit, but not a party, cannot be given in evidence. So in 1 *Root,* 502, the declarations of *one* co-obligor, *not sued* with the defendant, are not evidence; and in *Mass. Reports,* 71, "an opinion said to have been expressed by one of the devisees, is not admissible to prove the testator was insane."

The court are also of opinion, that the opinion of the court below, as expressed in the *seventh* bill of exceptions, ought to be concurred in. The declarations of *Violet,* the ancestor from whom the petitioner claims his freedom, was proper evidence to be submitted to the jury. The objection arising under the act of 1717, *ch.* 13, relied on by the counsel, cannot be sustained, the case is not within either the letter or spirit of that act, nor can it have any influence or operation upon it.

It is not necessary to consider the legal effect of the second objection raised by the counsel, in the argument of this exception, that the declarations of *Violet* ought not to be received in evidence, because the petitioner did not claim freedom from her, but paramount to her; because, from an examination of the record, the fact will be found to be otherwise. No attempt whatever was made by the *petitioner* to prove a title to his freedom, paramount to *Violet;* on the contrary, he claims his freedom as being the son of *Tansey,* who was the daughter of *Violet,* a free Indian woman; and not a tittle of testimony was offered by the petitioner to trace his title to freedom to a more remote ancestor.

The *eighth* bill of exceptions having been abandoned by the counsel for the petitioner, the opinion expressed in that exception is concurred in.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.