# KAHUAKAINUI HELEKAHI v. VICTORIA LOVELL LAA, JOAQUIN TEXEIRA AND JOHN APUPAU.

## No. 1998.

Submitted April 13, 1931.         Decided May 28, 1931.

### PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

This is a statutory action to quiet title to the land described in L. C. A. 3517, R. P. 6208, to Kanuiheana. The plaintiff alleged in her declaration that she was the owner of the whole land. Two of the respondents defaulted and judgment was rendered to the effect that they had no interest in the land. The appellee claimed an undivided one-third interest.

The plaintiff relied upon title derived through one Kealoha, Sr., who was claimed to be the son of the patentee; and the appellee relied upon title derived through Peneku, who was claimed to be a brother of the patentee, the further claim of the appellee being that the patentee left no issue. By stipulation of the parties two questions were submitted to the jury for its determination, first, "was Kealoha the son of Kanuiheana and Nawai," second, "was Peneku the brother of Kanuiheana." The jury in its special verdict answered the first question in the negative and the second question in the affirmative. Thereupon, under section 2431, R. L. 1925, the presiding judge entered a verdict to the effect that the appellee was entitled to an undivided one-third interest in the land and a formal judgment was later filed in conformity with the general verdict.

Upon the questions whether the patentee had a son, Kealoha, Sr., and had a brother, Peneku, some testimony of living witnesses was adduced on each side. Against the objection of the appellant the court received in evidence the record, offered by the appellee, of testimony given by five witnesses in 1879 in a proceeding in probate

had before a circuit judge of Maui; and also a copy of a petition for administration of the estate of Kanuiheana for declaration of heirs and a subsequent petition for rehearing in the same case. The decree in that case, if there was one, was not offered in evidence. The two petitions were offered and received solely for the purpose of showing that the testimony of the five witnesses just referred to was given in a judicial proceeding and immediately upon the admission of the two petitions the jury was clearly instructed by the presiding judge that that was the sole purpose of receiving them. In this there was no error. The jury was clearly instructed that the two petitions were not evidence on the subject of the relationships in question. The record of the testimony given by the five witnesses reads as follows:

"Kahele (k), sworn: Knew dec'd. He died in 1856. He was married to Nawai (w). She is dead. She died after her husband. They had no children. Kenui's brother was Peneku. He only. Their father was Helewaa, their mother was Namaielua. Peneku's wife was Kamaka-heana, and they begat Kealo (k), Peneku-opio (k), Pahau (k), Nunee (w) and Kawahine (w) (the petitioner). Kealo and Peneku-opio died childless; Pahau and Nunee left children."

"Mahi (k), sworn: Knew Helewaa and Namaielua, the parents of Kenuiheana (k) and Peneku (k). Kenui-heana had a wife Nawai, but no children. Peneku had Kamakaheana for wife, and they had Kealo who died childless, Peneku-opio who also died childless, Pahau (k) who died leaving a daughter, Nunee (w) who died leaving two children (Polly and William Brooks), and Kawa-hine (w) the petitioner. Kenuiheana had land in Waihee, 3½ acre taro land. The land is now in possession of petitioner and the other heirs."

"Kaulahea (k), sworn: Knew Nawai, the wife of Kenuiheana. She survived him and married again to

Naipu (k) now alive. Nawai died in 1872, in the latter part of that year, or early part of 1873. Saw her corpse. She died in Waihee. About 7 years ago. Knew Kealoha (k). He is at Kalawao now. Nawai's younger sister Kukona was the mother of Kealoha, and Nailima was his father. Nailima was no relation of Kenuiheana. Kamehameha V died after Nawai. They died the same year."

"Naipu (k), sworn: My wife Nawai died about 7 years ago. When she died I married another wife. Nawai was dead about two months when I married again. Knew Kealoha (k), he was the son of Kukona, the sister of Nawai. Nailima was his father who was no relation of Kenuiheana."

"Lono (k), sworn: I was school master in Waihee in 1872. Became such in October of that year. As such I recorded the births, deaths &c. Knew Nawai (w), the widow of Kenuiheana. Nawai died in June, 1873, on June 15'. Witness presents his memorandum book confirming his statement. I was the husband of Nunee (w)."

The admission of the testimony of these five witnesses cannot be justified under the doctrine that it was testimony under oath given in a judicial proceeding, for that doctrine clearly requires that in order to its admissibility in a subsequent case the two cases should be between the same parties or their privies. The reason underlying the admission of testimony given under those circumstances is, first, that the testimony was under oath, and, second, that the parties or their predecessors in interest were present when it was taken and had the right respectively to examine and to cross-examine.

The other rule under which perhaps the testimony was received is that referred to in *Makekau* v. *Kane*, 20 Haw. 203, and *Drummond* v. *Makaena*, 30 Haw. 116. In the first of these cases this court said at page 205: "The proof to show pedigree forms a well settled excep-

tion to the rule which excludes hearsay evidence. This exception has been recognized on the ground of necessity; for as in inquiries respecting relationship or descent facts must often be proved which occurred many years before the trial and were known to a few persons, it is obvious that strict enforcement in such cases of the rules against hearsay evidence will frequently occasion a failure of justice. * * * Traditional evidence is therefore admissible. * * * The rule is that declarations of deceased persons who were de jure related by blood or marriage to the family in question may be given in evidence in matters of pedigree. * * * A qualification of the rule is that before a declaration can be admitted in evidence the relationship of the declarant with the family must be established by some proof independent of the declaration itself, but it is evident that but slight proof of the relationship will be required since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy." The rule was repeated in the later case. In the cases of the witnesses Kahele, Mahi, Kaulahea and Lono there is not the slightest evidence, either *aliunde* or in the very testimony of those witnesses, that any of the four was related by blood or marriage to the family concerning whose relationships and pedigree he was testifying. For aught that appears to the contrary in the record of that case or in the record of the case at bar, Kahele, Mahi, Kaulahea and Lono were mere friends or acquaintances of the patentee or of some other member of his family. Under these circumstances the recorded statements of these four declarants were erroneously received.

Naipu, the fifth witness of 1879, testified *inter alia*: "My wife Nawai died about 7 years ago." In other words, he testified that Nawai was his wife. It may be that in such a case as this in which the declarant testified to a fact clearly within his own knowledge and one upon

which no other person would be in a better position to know the facts, the rule ought to be modified so as to render unnecessary additional evidence *aliunde* of the witness's marriage. However, since a new trial must in any event be granted this point is not now decided, for it may be that upon the new trial evidence of Naipu's relationship to the family in question will be introduced *aliunde*.

D. K. Kaialiilii, having been called to the stand and sworn in the case at bar, testified that Pane was his wife and that Pane's mother was Kawahine. He further testified that Kawahine's father was Peneku, that Peneku and Kanuiheana, the patentee, were brothers, that Nawai was the wife of Kanuiheana and that the patentee and Nawai had no issue. Kaialiilii also testified that Kamakaheana was the wife of Peneku and that these two had four children (other than Kawahine), whose names he gave, and that one of these children, Pahau, married and had two children, Keala (k) and Lono (w). On cross-examination Kaialiilii testified that the testimony he had given concerning Kawahine's father (Peneku) and her uncle (the patentee) and the other branches of the family was based upon statements made to him by Kawahine, his mother-in-law. The plaintiff moved to strike out all of the testimony of Kaialiilii on the ground that there was no evidence *aliunde* to prove that Kawahine was a member of the family whose pedigree she had given, that is, no evidence other than her own declaration. It is true that, for reasons which are obvious and have been often stated in the books, hearsay evidence is not ordinarily admissible, but it is equally well established that from reasons of public convenience and necessity an exception is made in favor of admitting hearsay statements in cases of pedigree. It is definitely settled that a member of a family may testify to its ramifications based on family history and tradition handed down to

him by his ancestors or by his collaterals. Testimony on the witness stand of such statements based upon family history and family tradition is not to be excluded simply because there is no evidence *aliunde* that each and all of the relatives who transmitted the information were themselves members of the family, or because there was no evidence tending to show precisely how each such declarant was related to the remainder of the family. Let it be assumed, however, for the purposes of this case that what Kaialiilii testified to could not properly be regarded as family history or tradition, but was simply a repetition of the statement of one person, Kawahine. Still Kaialiilii's testimony was correctly admitted. In the first place there was the necessary evidence *aliunde* that Kawahine was a member of the family concerning which she made the declarations. Kaialiilii himself testified that Pane was his wife and that Kawahine was her mother. Both of these were clearly facts concerning which he was competent to testify. Kawahine's relationship to a part of the family having been thus shown by the evidence of Kaialiilii, her declarations concerning other members of the family thereupon became admissible. "The general rule, as stated by text books and promulgated by a heavy preponderance of the decided cases, is to the effect that while a declarant as to the relationship of a person in a family must be shown, by independent evidence, to belong to the family, it is not necessary to establish that he belongs to the same branch of it as does the person to whom his declaration relates. 'The steps or links constituting the family relationship in any given case may properly be stated in the extrajudicial pedigree declaration of any competent declarant. The general relationship of A to the other members of his family may be stated in this way. The assertion of a specific relation to the family is as admissible as one of a more general nature. No limitation is imposed that

the statement of relationship should be made concerning the particular branch of the family to which the declarant belongs. The assertion may cover any branch, direct or collateral, of the entire family to which the declarant is related, either by blood or marriage.' " *Shèa* v. *Hyde*, 107 Conn. 287, 292, 293. See also *Neustadt* v. *Coline Oil Co.*, 284 Pac. (Okl.) 52, 54-56. In the second place when, as in this instance, the case is that Kaialiilii in effect asked Kawahine, "Who was your father and who was your uncle," that of itself presupposes and shows that the declarations about to be made were those concerning a family of which Kawahine was a member and in such an instance there is nothing to be gained by requiring in advance other evidence that Kawahine was a member of her own mother's family. The motion to strike Kaialiilii's testimony was correctly denied.

Under some circumstances it has been held that the erroneous admission of evidence is not prejudicial and not ground for a new trial when it was merely cumulative to other evidence received to the same general effect. In the case at bar, however, there had been some evidence, rather evenly divided perhaps, on each side of the main dispute, to-wit, whether the patentee left any issue and whether he had a brother named Peneku. The evidence which was received of the four witnesses who testified in 1879 in the probate case may well have been regarded by the jury as of great weight and may well have been the deciding factor leading to the verdict which was rendered. Under these circumstances the error in the admission of the evidence of the four witnesses of 1879 cannot be regarded as nonprejudicial.

Another exception is to the admission in evidence, against plaintiff's objection, of a deed by J. K. Nailima to J. Garcia, under whom the plaintiff claims. This deed was dated April 22, 1919. Its operative words and description were as follows: "Do hereby give, grant, bargain,

sell & convey * * * all of my undivided right, title and interest in and to those certain premises situate at Kapahukauila, Waihee, described in R. P. 6208, L. C. A. 3517, same being the premises deeded to me by Sam Kala'e Kealoha, appearing of record in the Registry of Conveyances in Honolulu in Liber 478, page 500."

On January 7, 1924, the same J. K. Nailima executed a deed to one Kalehua, under whom the defendant claims. This deed in its operative words and description reads as follows: "do by these presents, give, grant, bargain, sell and convey * * * 1. Portion of land situated at Waihee, ili of Kapahukauila, described in R. P. 6208, L. C. A. 3517, to Kanuiheana, with one frame building thereon, and conveyed to me by deed of Kaholokahiki and wife, dated September 2nd, 1909, recorded in Liber 317, pages 333-334."

The deed of 1924 did not contain any covenant of warranty. That of 1919 contained the following covenant: "I do * * * covenant and agree to and with said J. Garcia, that I am the lawful owner in fee simple of an undivided interest in said premises, that I have good right and title to sell and convey the same as ·aforesaid, and I will * * * warrant and defend. title therein unto the said J. Garcia, against the lawful claims and demands of all persons whomsoever."

The objection to the admission of the later of these two deeds is based upon the ground that by the earlier deed Nailima had conveyed all of his right, title and interest to Kanuiheana's kuleana and therefore had nothing left to convey by his deed of 1924. In reply to this objection and contention it is argued by the defendant that it clearly appears from the deed of 1924 that it was Nailima's intention to convey by that deed all of the interest which he had acquired from one Kaholokahiki by deed dated September 2, 1909. It need hardly be said that even if it appears beyond doubt from the language

used in the deed of 1924 that it was Nailima's intention thereby to convey to Kalehua the interest which he had acquired in 1909 from Kaholokahiki, still, if in 1919 Nailima had already conveyed away that interest (derived from Kaholokahiki) to Garcia, his intention and desire to convey by the later deed would be wholly ineffective. The sole question presented is, therefore, whether by the deed of 1919 Nailima conveyed the interest which he had obtained from Kaholokahiki. Both the deed from Kaholokahiki, executed in 1909, and the deed from Kealoha, executed in 1918, were prior to the deed by Nailima of 1919. It follows that immediately prior to the execution by Nailima of his deed of 1919 both interests (that which had been Kaholokahiki's and that which had been Kealoha's) were vested in Nailima. The case is not complicated by any after-acquired title because no title was acquired by Nailima between the date of his deed of 1919 and the date of his deed of 1924.

Nailima's statement in the deed of 1919 is that he was thereby conveying to Garcia "all of my undivided right, title and interest" in and to the patentee's kuleana. That language, if it had stood by itself, would have been entirely unambiguous. There can be no misunderstanding what is meant by a conveyance of all of the grantor's right, title and interest. That part of the description, standing alone, would include and would operate to convey both the Kaholokahiki interest and the Kealoha interest. It is the additional language used, "same being the premises deeded to me by Sam Kala'e Kealoha, appearing of record in the Registry of Conveyances at Honolulu in Liber 478, page 500," which can be claimed to introduce any doubt. If the later words of description had been "being the same interest" acquired from Kealoha, there might have been greater support for the contention that the later part of the description was intended as a limitation upon the broad and all-inclusive

earlier description that what was being conveyed was "all" of the grantor's right, title and interest. The language used is "same being the *premises*." The word "premises" is here used in our opinion as meaning land and not as meaning "interest." In the same sentence the grantor had already used the same word "premises" as meaning land. We think that the correct construction of the later element of the description is that it does not limit the generality of the earlier description so as to exclude the interest acquired from Kaholokahiki, but that it is merely an incomplete description in saying that it was the same land acquired from Kealoha. There is, in reality, no inconsistency between the two clauses. For a parallel case, see *Willard* v. *Moulton,* 4 Greenleaf (Me.) 14. This view is strengthened to some extent by the covenant contained in the deed of 1919 warranting that the grantor was the lawful owner in fee simple of "an undivided interest" in said premises, without distinguishing in the same covenant between the interest derived from Kealoha and the interest derived from Kaholokahiki. If it had been the intent of the parties, and particularly of the grantor, to distinguish between those two interests and to convey the one and not the other, the grantor being at the time owner of both, it would be natural to expect some reference to that distinction in the clause warranting title to that which was conveyed. Under these circumstances, the later deed of 1924 did not convey to Kalehua the interest which the grantor had acquired from Kaholokahiki because that interest had already been conveyed by Nailima to Garcia. The deed of 1924 was, therefore, immaterial and was erroneously received in evidence.

The exceptions are sustained, the verdicts and judgment are set aside and a new trial is granted.

*Wendell F. Crockett* for plaintiff.

*E. Vincent* for defendant Victoria L. Laa.