[Civ. No. 20647.   Second Dist., Div. One.   Mar. 23, 1955.]

PEDRO VARGAS, a Minor, etc., et al., Appellants, v. PETE VARGAS, Respondent.

J. Widoff for Appellants.

Y. B. Arsen for Respondent.

WHITE, P. J.—Enedina and Pedro, children born unto Jennie Villa on January 21, 1942, and May 25, 1945, appeal from a judgment for defendant in their action by their guardian *ad litem* to have defendant declared to be their father and to enforce his obligation to give them support and education suitable to his circumstances.   (Civ. Code, § 196a.)

The court found that defendant did not have sexual inter-

course with plaintiffs' mother at the time either was conceived; and that defendant is not the father of either of the plaintiffs. Plaintiffs, in their briefs, urge that those findings are not supported by the evidence.

■ The record on appeal is lengthy, and the only evidence not in conflict is that the children were born; that their birth and baptismal certificates show defendant as their father; that the information upon which the certificates were based was given by their mother; that the mother of plaintiffs was married on August 3, 1932, to one Joe Anaya, and that she and her said husband were not divorced until some time after May 25, 1945.

Jennie Villa testified that she had not seen her said husband at any time after 1938 and that defendant was the father of the plaintiffs. She testified that at the time of conception she was living with defendant as his wife and that from 1938 to 1945 she did not have intercourse with any man other than defendant. Numerous friends and relatives, including a sister and a sister-in-law of the defendant and the minor plaintiffs, corroborated some of her testimony.

Defendant testified that he never at any time had had sexual intercourse with Jennie. He denied that he had ever at any time lived with her, and testified that he did not see her at any time in March, April or May of 1941, and that he did not see her at any time during the months of July, August or September, 1944.

Concerning the husband of Jennie Villa, in addition to her own testimony that she had not seen him since 1938, the record includes the testimony on cross-examination of Carmen Gujardo, called by plaintiffs, to the effect that she had seen him on the street once in 1951 or 1952 and Jennie had told her who he was; and the testimony of Joe Vargas, a brother of defendant, that on August 10, 1941, he heard Jennie Villa tell defendant that she had an argument with her husband, that he had hit her, and that she was planning to separate. The following is quoted from the defendant's testimony:

"Q. Did Jennie Villa ever mention her husband to you? A. Yes, she did.

"Q. When did she mention him? A. It was in August 10th, 1941.

"Q. How did the discussion come about? How did it come up? A. She came to work in the morning—— . . . and she had a piece of cloth on her face, so then I looked at her, and she had some bruises on her face, and I asked her what had

happened, and she said, 'I got into an argument with my husband because he won't work and he is drinking all the time and I am thinking about leaving him.'

"Q. Now, after that conversation, did you employ her, did you or did you not employ her at that time? A. I let her remain. I did.

"Q. That was the entry in this book for August 10th? A. That is right."

The foregoing evidence, in connection with the entire record on the appeal now engaging our attention, is sufficient to support the findings and judgment.

█ Plaintiffs further contend that the judgment should be reversed because the court "erred in refusing to admit the testimony of the plaintiffs to the effect that the defendant was their father." *Estate of Ganes*, 114 Cal.App. 17 [299 P. 550], is cited and relied upon. In that case it was held not to be reversible error to permit a party to testify "that she knew of her own knowledge that she was the natural child of decedent" and, at page 19, the court said: "That such evidence was competent is attested by the decision in the case of *Comstock* v. *State*, 14 Neb. 205 [15 N.W. 355], where it is held that 'a child may be a competent witness to testify to the fact of his parentage.' (Citing cases.)"

The record on the instant appeal discloses the following testimony of the plaintiff Enedina:

"Q. By Mrs. Mack: I am asking you about this gentleman down here (indicating). A. What is wrong?

"Q. Who is he? A. He is my father.

"Mr. Tierman: That is exactly the basis of the objection. I will ask that it be stricken.

"The Court: Now, that answer will be stricken."

And the following is quoted from the testimony of the plaintiff Pedro:

"Q. Who is your father? A. Pete Vargas.

"Q. Peter Vargus, do you know this gentleman at the table here, the one way down there (indicating)? Will you stand up, please, Mr. Vargas. (Defendant standing.)

"Q. Do you know him? A. Yes.

"Q. Who is he? A. My daddy.

"Mr. Tierman: I ask that the answer be stricken as a conclusion.

"The Court: The answer may be stricken."

It would not have been reversible error had the trial court denied respondent's motions to strike in the instances above

quoted. In the instant action, however, at the end of the trial the court said: ". . . If I hold that he is not the parent, that, of course, too, would be a mental shock to them (the minor plaintiffs) because obviously they have been brought up in the belief that he is. *I don't think there is any doubt that they do have that belief.* Whether it is true or not is another matter, and for me to decide." (Emphasis added.)

Admission in evidence of the answers stricken could have added nothing to the court's conviction that the children believed the defendant to be their father. It cannot be doubted therefore that the decision would have been the same if the errors complained of had not been made.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.