## LUSBY *v.* STATE

[No. 265, September Term, 1957.]

*Decided May 26, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Joseph A. DePaul* and *Ignatius J. Keane,* with whom was *Joseph G. Lindamood, Jr.,* on the brief, for appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Blair H. Smith, State's Attorney for Prince George's County,* on the brief, for appellee.

HORNEY, J., delivered the opinion of the Court.

Oden C. Lusby (the defendant) was convicted of incest in the Circuit Court for Prince George's County by a jury. He appealed, assigning as error the refusal of the trial court to declare a mistrial, the ruling on the sufficiency of the evidence pertaining to parentage, the denial of the defendant's motion for a directed verdict, and the misconduct of the prosecuting attorney.

The seventeen year old prosecuting witness testified that she lived with her father and a younger brother and sister in an apartment in Hyattsville. On Saturday, June 29, 1957, she returned to the apartment shortly before midnight and went into the bedroom to prepare for bed. Her brother and sister were not at home that night. While she was undressing

her father called to her and told her not to go to bed. She knew what he wanted "because he had done it before." The defendant then engaged in sexual intercourse and an alleged perverted practice with his daughter in the bedroom. This illicit relationship had begun when the daughter was thirteen years old, and had been continued thereafter at varying intervals, infrequently at first—once or twice a week. But as time went on the assaults were intensified—occurring sometimes every night of the week. The daughter was dependent on her father for her means of living. He often used abusive language, and she was afraid to do anything about the continued assaults for a long period of time. Finally she mustered enough courage to tell her boy friend what had happened. The boy friend told his mother, and thereafter the prosecutrix was permitted by the boy's mother to stay at their house. A medical examination revealed that the prosecutrix had a "marital vagina." She also admitted having twice engaged in sexual intercourse with her boy friend.

The trial court granted the defendant's motion for a directed verdict of "not guilty" under the indictment for the perverted practice.

The alleged errors in the trial of the defendant on the indictment for incest concern (i) the alleged prejudicial evidence with respect to the taking of polygraph or lie detector tests, and the misconduct of the prosecuting attorney in referring to such evidence, (ii) the insufficiency of the evidence as to the parentage of the prosecuting witness, and (iii) the question as to whether the prosecutrix was a victim or an accomplice. We will consider the errors assigned in the order presented.

### (i). Polygraph Tests.

The ruling of the trial court with respect to the statement by the prosecutrix that she had taken a lie detector test was not error. In examining the prosecuting witness, the State's Attorney asked her if she had been given any tests. She replied, "Yes sir, a lie detector." An objection to this response was sustained, and the trial judge then and there instructed the jury to disregard the answer of the witness.

Of course, the result of a lie detector test is almost uni-

versally excluded as evidence. But in this case, there is no question as to the admissibility of the *result*. Nor is there a question as to the admissibility of the *fact of taking* a test. The objection to the statement made by the prosecutrix was aimed not at its admissibility,[1] but at its prejudicial character. The only case we have been able to find on this point holds that the fact of taking was not prejudicial. In *State v. Sheppard,* 100 Ohio App. 345, 128 N. E. 2d 471 (1955), it was said:

> "The results of the test were not inquired about, and the simple fact that a test was made by agreement of the witness under the circumstances could not prejudice the defendant's case."

This decision was affirmed in *State v. Sheppard,* 165 Ohio St. 293, 135 N. E. 2d 340, *cert.* denied 352 U. S. 910 (1956).

We are unable to find that the trial court was wrong when it ruled that the statement made by the prosecutrix was not prejudicial, and refused to declare a mistrial. The granting of a motion for a mistrial is within the discretion of the trial judge, and there is nothing in the record to indicate that he abused his discretion. In *State v. Waterbury,* 133 Iowa 135, 110 N. W. 328 (1907), it was held that the question of prejudice is a matter which the trial court is in the best position to judge, and its decision should not be reversed unless it is clear that there was prejudice. Under the circumstances in this case, we think the prompt action of Judge Gray, in instructing the jury to disregard the answer of the prosecutrix, fully satisfied the right of the defendant to a fair trial. See *Cohen v. State,* 173 Md. 216, 195 A. 532, 196 A. 819 (1937).

There remains the inquiry whether the conduct of the State's Attorney was so prejudicial as to deprive the defendant of a fair trial. Obviously, the prosecuting attorney was determined not to accept the propriety of the court's ruling

---

1. There is authority that it is proper to sustain an objection to the admissibility of the *fact of taking* or a *refusal to take* a lie detector test. See *Henderson v. State,* 94 Okla. Crim. 45, 230 P. 2d 495 (1951), and *State v. Kolander,* 236 Minn. 209, 52 N. W. 2d 458 (1952).

as to the polygraphic tests. On several occasions during the course of the conferences of counsel with the judge at the bench, the State's Attorney referred to the polygraph tests which had been given the defendant as well as the prosecutrix. And, during his examination of Sergeant E. F. G. Gray, of the Prince George's County Police Department, he asked the detective sergeant, "What, if any, tests were given the defendant?" The court again promptly sustained the objection to the question, and it was not pressed further. The defendant contends that the several colloquies between counsel and the judge at the bench could be heard by the jury, but there is nothing in the record to substantiate this contention. He further argued that the action of the State's Attorney in continually referring to the "tests" which had been made were prejudicial and constituted grounds for a mistrial, but, again, there is nothing in the record to support this argument. We are unable to hold that the efforts of the State's Attorney to introduce evidence as to lie-detector tests (subsequent to the statement by the prosecuting witness which we have already discussed) went beyond the limits permitted by the court's ruling made in a conference at the bench while the detective sergeant was on the stand. We find no objection by the defendant to this ruling made at that time, nor was the motion for a mistrial renewed when a question relating to tests was asked and the defendant's objection was sustained. There was no answer to the improper question propounded to the detective sergeant on the witness stand. And all other reference to polygraphic tests were made at the bench, ostensibly out of the hearing of the jury.

Generally speaking, the courts require the party prejudiced by the asking of an improper question to preserve his rights by a seasonable objection or motion for a mistrial. See *Annotation*, 109 *A. L. R.* 1089. See also *Stoskoff v. Wicklund*, 49 N. D. 708, 193 N. W. 312 (1923), and *State v. Waterbury, supra.*

In 53 *Am. Jur., Trial*, Sec. 971, it is said:

"It is impossible to define all the circumstances that may constitute an urgent necessity justifying [the declaration of a mistrial and] the discharge of

> a jury in a criminal case. Except as found in the decided cases, the matter is left to the sound discretion of the presiding judge, acting under his oath of office, having due regard to the rights of the accused and the state. The power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes."

There is nothing in the record to show any "plain and obvious" reason why a mistrial should have been declared.

(ii). Proof of Parentage.

The testimony of the prosecutrix to the effect that the defendant was her father was sufficient proof of her pedigraic status. The defendant contends that the State did not prove by competent evidence that the prosecuting witness was his daughter; that the only evidence produced was hearsay; and that the State should have introduced evidence of greater reliability, such as a birth certificate or other documentary evidence.

31 *C. J. S., Evidence,* Sec. 226 (b), states that: "It has been held proper, where the evidence is otherwise competent, for one to testify to facts of family history which relate to him, such as the identity of his parents, or other relations * * * ."

In *Comstock v. State,* 14 Neb. 205, 15 N. W. 355 (1883), it was said:

> "It is certainly competent for one who, from his earliest recollection, has been a member of one's family, given his name, and reared in the belief, and in all ways given to understand that he is a son in the household, to testify of his parentage. His testimony may not be satisfactory or conclusive of the fact, but it is at least admissible for what it is worth in the minds of the jury, and clearly sufficient to make a *prima facie* case, thus throwing the burden of overcoming it upon him who controverts it. To so rear a child, is in the nature of an admission of parentage, and should be so regarded."

See also *In re Gane's Estate,* 114 Cal. App. 17, 299 P. 550

(1931), in which a daughter was allowed to testify that she was the natural child of her mother.

It was pointed out in *Crawley v. Selby*, 208 Ga. 530, 67 S. E. 2d 775 (1951), that the hearsay rule refers only to *declarations* of pedigree by deceased or unavailable parties, and not to *testimony* by one who is a witness in the case. The opinion further states: "Since the witness is herself the one to whom the facts relate, it is not necessary for her to first establish by independent evidence her relationship to her family * * *. It has also been held proper for one to testify to facts of family history which relate to him." And. see *Dazio v. Wainwright*, 81 So. 2d 96 (La. App. 1955), which held that: "A proper distinction must be made between an unsworn hearsay declaration resorted to to prove an essential fact and the testimony of a witness on matters within his personal knowledge." Other cases applying the same rule where one member of a family testified to his relationship to another member include *Vargas v. Vargas*, 131 Cal. App. 2d 748, 281 P. 2d 18 (1955), and *Helekahi v. Laa*, 32 Hawaii 1 (1931).

None of the Maryland cases on pedigree evidence involved direct testimony of a relationship but instead concerned declarations of deceased persons, which, incidentally, are admissible as an exception to the hearsay rule. See *Gray v. Rideout*, 190 Md. 204, 57 A. 2d 778 (1948); *Craufurd v. Blackburn*, 17 Md. 49 (1861); *Copes v. Pearce*, 7 Gill 247 (1848); *State, use of Charlotte Hall School v. Greenwell*, 4 G. & J. 407 (1832); *Walkup v. Pratt*, 5 H. & J. 51 (1820). However, in the *Craufurd* case, even such declarations are referred to as *primary* evidence, not as *secondary* evidence, to be excluded when a witness having personal knowledge is available.

In the instant case, the testimony of the daughter was not hearsay. Her testimony was not controverted. And, if believed, it was sufficient to establish proof of the fact that the defendant was her father. The weight of the evidence was for the jury.

(iii). Prosecuting Witness—Victim or Accomplice?

Under the circumstances in this case, the prosecutrix was

a victim and not an accomplice. The defendant urges that since the prosecuting witness was an accomplice, he could not be convicted on her uncorroborated testimony, and for that reason the trial court should have granted his motion for a directed verdict of "not guilty" of incest. His argument is that initially she may have been the victim of his odious acts, but that during the ensuing four year period there came a time when she acquiesced and thereby became an accomplice.

At common law, in the trial of offenses against the chastity of women, the testimony of the prosecuting witness was sufficient evidence to support a conviction, and neither another witness nor corroborating circumstances were necessary. *7 Wigmore, Evidence* (3d ed. 1940), Sec. 2061. There are numerous cases in other jurisdictions which do not require corroboration of an incestuous relationship even if the female participant was an accomplice,[2] but there are none in Maryland. Compare, however, the statement in *Basoff v. State*, 208 Md. 643, 119 A. 2d 917 (1956), in which we held, at p. 654, that: "[A] woman upon whom an abortion has been performed [with her consent or even on her solicitation] is regarded * * * as a victim * * *, rather than * * * a participant * * *. [And] her testimony does not require corroboration where it establishes satisfactory proof of the guilt of the accused."

Whether a participant in an incestuous relationship is an accomplice or a victim must depend upon the facts in each case. Obviously, the relationship will not submit to a rigid rule. *7 Wigmore, Evidence* (3d ed. 1940), Sec. 2060(b), footnote 7. That the status of a participant is entirely a factual one is demonstrated by those cases which hold that the woman will be an accomplice where she *freely and willingly consents* to the sexual union. See, for example, *State v. Terry*, 199 Iowa 1221, 203 N. W. 232 (1925) ; *State v.*

2. See *State v. Wood*, 235 N. C. 636, 70 S. E. 2d 665 (1952); *People v. Gibson*, 301 N. Y. 244, 93 N. E. 2d 827 (1950); *State v. Haston*, 64 Ariz. 72, 166 P. 2d 141 (1946); *State v. Aker*, 54 Wash. 342, 103 Pac. 420 (1909). See also the dictum in *State v. Dziob*, 133 Conn. 167, 48 A. 2d 377 (1946).

*Clark,* 27 Idaho 48, 146 P. 1107 (1915); *Knowles v. State,* 113 Ark. 257, 168 S. W. 148 (1914); *Soloman v. State,* 113 Ga. 192, 38 S. E. 332 (1901); *State v. Kellar,* 8 N. D. 563, 80 N. W. 476 (1899).

Where, however, a passive participant in an incestuous relationship *does not freely consent* to copulation, and where the sexual union is achieved by force, threats or undue influence on the part of the aggressive participant, the passive participant is not an accomplice, but a victim. See *State v. Stalker,* 169 Iowa 396, 151 N. W. 527 (1915), (not accomplice unless *she* willingly consented); *State v. Hornaday,* 67 Wash. 660, 122 P. 322 (1912), (not accomplice, but unwilling victim within *his* power); *Schwartz v. State,* 65 Neb. 196, 91 N. W. 190 (1902), (not accomplice although relationship continued over two years); *Whittaker v. Commonwealth,* 95 Ky. 632, 27 S. W. 83 (1894), (victim, not accomplice, even though relationship long-continued). See also *McCreary v. Commonwealth,* 163 Ky. 206, 173 S. W. 351 (1915); *Gaston v. State,* 95 Ark. 233, 128 S. W. 1033 (1910); *State v. Kouhns,* 103 Iowa 720, 73 N. W. 353 (1897).

Even if the prosecuting witness were an accomplice, it has been held that evidence of a marital vagina is sufficient corroboration of the testimony of the prosecuting witness. *People v. Stratton,* 141 Cal. 604, 75 P. 166 (1904).

As Judge Collins pointed out in *Gregoire v. State,* 211 Md. 514, 128 A. 2d 243 (1957), there is a distinction between mere submission and actual consent. At p. 520 he said:

> "Consent, in law, means a voluntary agreement * * * to do something proposed by another. 'Consent' differs very materially from 'assent'. The former implies some positive action and always involves submission. The latter means mere passivity or submission, which does not include consent."

In the present case there was sufficient evidence from which the jury could find that, although the daughter *had assented* to the sexual union with her father, she *had not consented* to it. There was evidence that the incestuous relationship was odious to her. She was afraid of her father. But her

dependence on him compelled her to remain under his roof and continue the unholy relationship whenever he demanded. The jury could also have found that the participation of the daughter was *not voluntary*. And, of course, "the burden of *proving* the witness to be an accomplice is * * * upon the party alleging it [the defendant] for the purpose of invoking the rule, * * *." 7 *Wigmore, Evidence* (3d ed. 1940), Sec. 2060(e). There was no such proof in this case. The denial by the trial court of the motion of the defendant for a directed verdict of not guilty of incest was clearly right.

*Judgment and sentence affirmed,*
*the appellant to pay the costs.*

PRESCOTT, J., filed the following dissenting opinion.

I agree with the majority opinion on all matters other than the amount of prejudice to the defendant created by the state's attorney's persistence in "getting to the jury" the information that both the defendant and the prosecuting witness had taken lie detector (polygraph) tests and that he desired to offer the results of those tests. When the question concerning the fact that the prosecuting witness had taken such a test was first asked her, the trial court very properly sustained an objection to the question, but failed to grant a motion by the defendant for a mistrial. The state's attorney, thereafter in spite of the previous ruling by the court that such evidence was inadmissible, asked practically the same question in the presence of the jury. He asked Sergeant Gray if the defendant and the prosecutrix had submitted to the tests. In addition, the record makes it plain that there were lengthy conferences at the bench relating to the admissibility *vel non* of this evidence. This was most damaging to the defendant's case. It was obvious to all, including the jury, that the defendant and the prosecuting witness both had been subjected to lie detector tests, and the *results* were favorable to the state's attorney's case; otherwise, he would not have stubbornly pressed for their admission.

What was the purpose of the state's attorney in bringing these tests to the attention of the jury, not only a first but a

second time, after the court had ruled that they were inadmissible and instructed the jury to disregard them? This persistence was prompted, unquestionably, by a realization that the state had to rely entirely upon a seventeen year old prosecuting witness, alone, in order to obtain a conviction; consequently, the state was sorely pressed to bolster its case from any quarter available. In my opinion, it was this inherent weakness in the state's testimony that rendered the trial court's refusal to grant the defendant's motion for a mistrial error. More will be said concerning this later.

In dealing with situations of this nature, our predecessors stated the rule in *Nelson v. Seiler*, 154 Md. 63, 72, 139 A. 564, as follows:

> "Generally, the choice of measures to protect the fair, unprejudiced, working of its proceedings is left to the discretion of the trial court, and only in exceptional cases will its choice be reviewed in this court. In the greater number of instances the injection into a trial of matter other than that involved in the issue to be decided is cured by withdrawal of it and an instruction to the jury to disregard it, but there may, of course, be instances in which it would not be cured in this way, and terminating the trial and taking the case up afresh before another jury would be the only adequate means of correction. Those instances are exceptional, but they do arise. *Waldron v. Waldron*, 156 U. S. 361, 363; *State v. Moran*, 99 Conn. 115; Review of decisions in L. R. A., 1918D, 4; *Balto. & O. R. Co. v. Boyd*, 67 Md. 32, 42; *Garlitz v. State*, 71 Md. 293, 305; *International Co. v. Clark*, 147 Md. 34, 42; *Duffy v. State*, 151 Md. 456; *Thompson on Trials*, secs. 960, 965 * * * On appeal this court is concerned only with the effect on the appellant's rights; and he was in effect denied the protection of rulings of the court, evidence not to be considered in the decision of the issue being tried was persistently given to the jury by counsel and its damaging tendency enlarged upon;

\* \* \* And it would seem to follow by equal reasoning that, if prejudicial misconduct is such that it could not be adequately cured by an instruction, a refusal of the only measure of protection left to the moving party, a termination of the trial, should be reviewable on appeal. This is in accord with conclusions adopted elsewhere. *Waldron v. Waldron,* 156 U. S. 361, 383. For these reasons we consider the overruling of the motion to have been reversible error."

In the case just quoted from, the trial court, as in the principal case, had overruled a motion for a mistrial by the defendant because of the insistence by the plaintiff's counsel that certain evidence was admissible. Although the trial court had cautioned the jury to pay no attention to the questions asked and to draw no inferences from them, this Court held that the failure to grant a motion for a mistrial was reversible error, for the prejudicial misconduct could not be adequately cured by an instruction to disregard the question. It will be noted this was a civil case in which a money judgment only was obtained; in the case at bar, a man's liberty is at stake, his long prison sentence depending upon the veracity of one witness alone.

In *McAllister v. State,* 140 Md. 647, 118 A. 147, there was a similar holding in a case tried by the court, though not a ruling for failure to grant a motion for a mistrial. At page 652, this Court said: "The questions \* \* \* in themselves imputed to the witness the crime of forgery and *imported a knowledge by the state's attorney of the truth of the charge."* (Emphasis supplied.) In the instant case, the same thing happened. The state's attorney's insistence upon the admissibility of the evidence that the defendant and the prosecuting witness had taken lie detector tests imported his knowledge of the results of those tests and that they were favorable to the state. The *McAllister* case was tried by the court, without the aid of a jury, and it was urged that in cases tried before the court, the strictness of the rules of evidence should be somewhat relaxed. This Court said at page 652: "\* \* \* we are unable to say \* \* \* that the trial court prob-

ably was not unconsciously influenced by the objectionable questions and the answers to some of them."

In *Duffy v. State*, 151 Md. 456, 470, 135 A. 189, this Court made another similar ruling. There, the persistence of the attorney for the state in asking questions after he had been informed they were inadmissible was held to be reversible error. In quoting, with approval, from *People v. Hamilton*, 268 Ill. 400, it was said: " 'To each of these questions an objection was sustained, but the mere asking of such questions was prejudicial. There is no possible theory upon which it can be claimed that such an examination was competent, and it seems incredible that a state's attorney should so far forget the duty devolving upon him in a criminal prosecution as to adopt such methods to attempt to discredit a defendant and to endeavor to prejudice the jury against him.' "

In *Leeks v. State*, 245 P. 2d 764, 770 (Okla.), the Court, of its own volition, raised the question of the objectionable nature of evidence concerning lie detector tests and held that such evidence materially affected the defendant's right to a fair trial. In *People v. Welke*, 68 N. W. 2d 759 (Mich.), an officer, who had given a lie detector test to the defendant was permitted to testify as to the events that occurred between him and the defendant at the time of the test, but he did not testify as to the results of the test. This witness stated that during the course of the test he told the defendant he was lying, and this was held reversible error. In *State v. Kolander*, 52 N. W. 2d 458 (Minn.), it was held reversible error to allow testimony that a defendant refused to take a lie detector test.

In *People v. Wochnick*, 219 P. 2d 70 (Cal.), a state's witness was permitted to testify to a conversation had with the defendant during the course of a lie detector test on the defendant. The witness testified that when a knife, the murder weapon, was shown to the defendant there was a violent reaction on the graph, and then the witness related the conversation that he had had with the defendant. The trial court specifically instructed the jury that it could not consider that portion of the conversation that related to the lie detector test as indicating whether or not there was any reaction to any technical test. The appellate court held, however, that

the damage had been done; the judgment was reversed and a new trial awarded. The Court said: "Despite the instruction of the court, the evidence of the partial results of the lie detector test with respect to defendant's reaction upon being shown the murder weapon was indelibly implanted in the minds of the jurors and could not have but had a prejudicial effect."

This Court has not heretofore had occasion to pass upon the question of the admissibility of the *results* of a lie detector test. The rationale of the out-of-state cases, briefly stated, would seem to be as follows. It is almost universally held that the results of such tests are inadmissible, in the absence of stipulation by the parties, whether offered by the state or proffered by the defendant.[1] *Henderson v. State,* 230 P. 2d 495 (Okla.), and the cases and authorities named therein; Cf. 3 *Wigmore, Evidence,* (3rd ed.) sec. 998. There seems to be only one reported case to the contrary, which was not appealed. *People v. Kenny,* 3 N. Y. S. 2d 348, 350. Where the results of the test have not been revealed and the state has taken the initiative and produced testimony showing that a lie detector test had been administered, it is not prejudicial if used as a step in connection with proof of the voluntary nature of a confession, *Tyler v. United States,* 193 F. 2d 24, 31, or if the results are favorable to the defendant, *LeFevre v. State,* 8 N. W. 2d 288, or if there be other independent evidence, properly admitted, that is highly unfavorable to the defendant, and which is likely to have a strong influence upon the jury, *Tyler v. United States, supra.* Such evidence, however, is or is not prejudicial and grounds for reversal depending upon the facts and circumstances of each case, where there is a lack of other strong evidence against the defendant and the conviction rests upon questionable or

---

1. The reason given is that the scientific principles involved in a lie detector test have not, as yet, reached the demonstrable stage as distinguished from the experimental state. Much has been written upon the subject: see articles and notes in 35 *Minn. L. Rev.* 310; 29 *Cornell L. R.* 535; 24 *Col. L. Rev.* 429; 37 *Harv. L. Rev.* 1138; 3 *Wigmore, Evidence* (3rd ed.) sec. 999.

circumstantial evidence. *State v. Kolander, supra; State v. Sheppard,*[2] 128 N. E. 2d 471 (Ohio).

The above conforms to the rule laid down by this Court in the Maryland cases first cited herein; so, the facts of the case at bar will be considered in the light of that rule. The facts of this case are unusual to the extent that the conviction rests entirely upon the truthfulness of a seventeen year old daughter of the defendant. She claimed the illicit association with her father occurred over a period of several years. There were other children in the family. No witness, including these other children, testified to having seen the slightest intimation that there was any undue interest by the father in this daughter. There is not a shred of evidence to corroborate her story other than the fact, if it may be called corroboration, that she had a "marital vagina." She frankly admitted that she had had intercourse with her "boy friend."

In a situation of this kind where the offense is claimed to have taken place in the home late at night, the defendant is in an extremely difficult and dangerous position. It is impossible for him to offer witnesses directly to refute the accusation; his only possible recourse is personally to deny it. The trial court, recognizing the obviously perilous position of the defendant, should have jealously guarded his rights to a fair and impartial trial. The state's attorney realized the weakness of his evidence, and, although objections to his questions were sustained, successfully conveyed to the jury that these tests had been given to both the prosecuting witness and the defendant, and the results of those tests were favorable to the state. This was doubly injurious and prejudicial to the defendant: not only was such evidence inadmissible, but when conveyed to laymen without any information as to the dependability of such tests, there is no way to measure the weight that the jury may have given such tests. They may well have considered the results as conclusive of guilt, even though the reason for their inadmissibility is their lack of

---

2. This is the widely known Dr. Sheppard case. It is cited in the majority opinion. It simply held that it was not reversible error where one witness out of a large number testified he had taken a polygraph test, without mentioning the results.

accuracy and reliability. As was stated by the Court in the *Kolander case, supra,* 52 N. W. 2d at page 465: "The impact upon the minds of the jurors of a refusal to submit to something which they might well assume would effectively determine guilt or innocence, under these conditions, might well be more devastating than a disclosure of the results of such test * * *." Theoretically it may be said that the defendant was not denied a fair and impartial trial, because the court instructed the jury to disregard the objectionable evidence; but the Courts should exercise at least a reasonable amount of practicality in the rendition of their judgments. In a situation of the kind we have in the instant case, can it be said that the court's admonition to the jury to disregard the references to the fact that lie detector tests had been made was effective in erasing the impression made upon the minds of the jury by the state's attorney that such tests had been made and the results were favorable to the state's case? Empirically speaking, it was about as effective as informing a three year old child, who has just received a handful of lollypops from a large, jolly, rotund, white-whiskered man dressed in red as he alighted from a sleigh drawn by eight reindeer, that there was no such personage as Santa Claus. I think the case is a classic illustration for invoking the rule previously stated and applied by this Court, and the case should be remanded for a new and, this time, an impartial trial.

